# CASE NO. 23-2535

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

KENNETH HASSON,
individually and on behalf of all others similarly situated,
*Plaintiff / Appellant*

v.

FULLSTORY, INC.,
*Defendant / Appellee.*

---

*On Appeal from an Order Entered in the United States District Court for the*
*Western District of Pennsylvania in Case No. 2:22-cv-00450*
*The Honorable Marilyn J. Horan, U.S. District Judge*

---

## BRIEF OF APPELLANT AND APPENDIX
## Volume I of II (Appx1–15)

---

**LYNCH CARPENTER, LLP**
Gary F. Lynch
Kelly K. Iverson
Jamisen Etzel
Elizabeth Pollock-Avery
Nicholas Colella
Patrick D. Donathen
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION.....................................................................3

STATEMENT OF ISSUES PRESENTED.............................................................4

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................5

STATEMENT OF THE CASE..............................................................................6

I.    FullStory procures companies—in and out of Pennsylvania—
      to install its wiretap script on their websites. ......................................6

II.   FullStory deployed its wiretap Script on Hasson's browser in
      Pennsylvania and wiretapped Hasson's communications with
      Mattress Firm's website. .......................................................................8

III.  Through its geolocation tracking, FullStory knew its wiretap was
      being deployed in Pennsylvania, and FullStory gained an economic
      advantage from that geographical tracking.........................................9

IV.   Causes of action, FullStory's motion to dismiss, and Hasson's
      request for jurisdictional discovery....................................................11

V.    The district court's order granting FullStory's Rule 12(b)(2) motion
      and denying Hasson's request for jurisdictional discovery. ............12

SUMMARY OF THE ARGUMENT ....................................................................13

STANDARDS OF REVIEW...............................................................................16

ARGUMENT .......................................................................................................17

I.    Applicable Legal Standards ...............................................................17

      A. Pennsylvania courts exercise personal jurisdiction up to the limits
         of the Constitution. .......................................................................17

B. The exercise of personal jurisdiction is proper when a defendant purposefully directs its activities into the forum and the claims at issue arise out of or relate to those activities............................................18

C. If a district court believes additional factual specificity is required to establish a defendant's contacts with the forum, it should permit jurisdictional discovery unless the claim is "clearly frivolous."..............20

II.  The district court applied the wrong test, leading it to incorrectly conclude that Hasson's claims did not arise out of or relate to FullStory's purposeful contacts with Pennsylvania...........................................21

A. FullStory purposefully availed itself of Pennsylvania by broadly disseminating its Script with the knowledge and intent that it would intercept communications in Pennsylvania..................................24

1. The district court erred by relying on cases in which a website's *accessibility* formed the only potential contact with the forum. This case is much different..................................................................29

B. FullStory not only knew it was continuously receiving intercepted communications from Pennsylvania, it also gained economic advantage from its ability to show website operators which visitors were located in Pennsylvania...................................................32

C. FullStory's contacts with Pennsylvania were intentional, extensive, and continuous; not random, fortuitous, or attenuated; and FullStory's contacts with Pennsylvania did not result from Hasson's unilateral activity. ...................................................................34

D. The district court incorrectly approached the *Calder* "effects" test as if it required a *stricter* jurisdictional analysis for intentional torts than the traditional purposeful availment test. ...............................41

III. The district court failed to identify any specific grounds for its finding that hearing the case in Pennsylvania would place an "undue burden" on FullStory.....................................................................................45

IV. Even if Hasson's allegations were not enough to establish *prima facie* personal jurisdiction, the district court erred in denying Hasson's motion for leave to take jurisdictional discovery............................................48

CONCLUSION ....................................................................................50

CERTIFICATIONS ............................................................................52

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
    137 S.Ct. 1773 (2017) ........................................................................20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................... 19, 28, 42

*Calder v. Jones*,
    465 U.S. 783 (1984) ................................................................. passim

*Carteret Sav. Bank, FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992) ....................................................... 21, 27

*Crumpton v. Haemonetics Corp.*,
    595 F. Supp. 3d 687 (N.D. Ill. 2022) .................................................34

*Del Valle v. Trivago GMBH*,
    56 F.4th 1265 (11th Cir. 2022) ........................................................22

*Fidrych v. Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) ...........................................................30

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    141 S.Ct. 1017 (2021) ............................................................... passim

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*,
    988 F.2d 476 (3d Cir. 1993) ....................................................... 45, 46

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ............................................................19

*Hood v. Am. Auto Care, LLC*,
    21 F.4th 1216 (10th Cir. 2021) .......................................................29

*IMO Industries, Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ............................................................41

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................. 18, 28

*Johnson v. Griffin*,
    85 F.4th 429 (6th Cir. 2023) ........................................................ 28, 43

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) .................................................................. 18, 44

*Knox v. MetalForming, Inc.*,
    914 F.3d 685 (1st Cir. 2019) ..............................................................43

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) ........................................................ 41, 42

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) ...............................................................41

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*,
    107 F.3d 1026 (3d Cir. 1997) ..............................................................20

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ...................................................... 34, 37

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992) ..............................................................20

*Metcalfe v. Renaissance Marine, Inc.*,
    566 F.3d 324 (3d Cir. 2009) ...............................................................17

*Milliken v. Meyer*,
    311 U.S. 457 (1940) ........................................................................28

*NBA Properties, Inc. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022) ..............................................................37

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
    496 F.3d 312 (3d Cir. 2007) ...............................................................19

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,
    149 F.3d 197 (3d Cir. 1998) ........................................................ 17, 22

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002) ...............................................................16

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F.4th 121 (3d Cir. 2022) ....................................................................26

*Remick v. Manfredy*,
   238 F.3d 248 (3d Cir. 2001) ...................................................................31

*Tire Engineering and Distribution, LLC v. Shandong Linglong
   Rubber Co., Ltd.*, 682 F.3d 292 (4th Cir. 2012) .................................46

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003) ....................................... 16, 20, 22, 50

*uBID, Inc. v. GoDaddy Group, Inc.*,
   623 F.3d 421 (7th Cir. 2010) .......................................... 34, 37

*UMG Recordings, Inc. v. Kurbanov*,
   963 F.3d 344 (4th Cir. 2020) ..................................................................33

*Walden v. Fiore*,
   571 U.S. 277 (2014) .......................................................... passim

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) .......................................... 20, 36, 37, 38

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ...............................................................22

Statutes

18 Pa. Cons. Stat. § 5701 .............................................................................11

28 U.S.C. § 1291 ...........................................................................................3

28 U.S.C. § 1332(d)(2) .................................................................................3

42 Pa. Cons. Stat. § 5322(b) ......................................................................17

Rules

Fed. R. Civ. P. 12(b)(2) ..............................................................................12

Fed. R. Civ. P. 12(b)(6) ..............................................................................12

## **INTRODUCTION**

Few companies in the world know as much about the internet behavior of Pennsylvanians as Defendant-Appellee FullStory, Inc. FullStory has developed a powerful and now-ubiquitous software tool designed specifically to capture minute details of internet users' interactions with websites, including their mouse cursor movements, scrolls, clicks, and keyboard strokes.

When communications are intercepted and monitored like that without the consent of all participants, it is downright intrusive, and in many places it is illegal. The Commonwealth of Pennsylvania is one such place, because its laws rightly safeguard the privacy of its citizens' communications.

FullStory wiretapped Plaintiff-Appellant Kenneth Hasson, a Pennsylvania citizen, in Pennsylvania while he was in Pennsylvania and visiting the website of a national bedding company, Mattress Firm. FullStory intentionally participated in this wiretap and countless others involving Pennsylvanians by marketing its software to website owners and by receiving the intercepted communications on FullStory's own servers.

FullStory also knew it was receiving wiretapped communications specifically from Pennsylvania because part of the data FullStory collects during the wiretaps is website visitors' location data. It also sells to its website operator clients the feature of being able to sort through intercepted communications based

on location. Those facts alone establish that FullStory purposefully availed itself of the privilege of doing business in Pennsylvania, and Hasson's claims arise directly out of FullStory's intentional contacts with Pennsylvania.

The district court thought otherwise, and dismissed Hasson's claims for lack of personal jurisdiction. This was wrong. The district court failed to apply the correct test for specific personal jurisdiction and did not analyze the numerous claim-related ways FullStory purposefully reached into Pennsylvania. First and foremost, this claim is about FullStory's wiretapping of Pennsylvanians' communications *from their devices while they were in Pennsylvania*, something that could only occur if FullStory established direct channels of electronic transmissions between itself and Pennsylvania. Those intentional actions by FullStory—which are the sole focus of Hasson's claims—plainly satisfy the test for specific jurisdiction articulated by the Supreme Court in its recent cases, and no federal appellate court authority supports the district court's contrary decision.

Further, even though Hasson specifically moved for leave to conduct jurisdictional discovery to establish FullStory's contacts with Pennsylvania in greater detail, the district court denied that motion, finding that even if such contacts existed, they were not relevant to the specific jurisdiction analysis. That is clearly incorrect under *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017 (2021), so at a minimum, this Court must vacate and remand.

## STATEMENT OF JURISDICTION

The district court had diversity jurisdiction under 28 U.S.C. § 1332(d)(2).

This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's order and opinion of July 25, 2023, which granted Defendant-Appellee's Motion to Dismiss for lack of personal jurisdiction.

# STATEMENT OF ISSUES PRESENTED

1.     Did the district court err when it failed to use the traditional purposeful availment rubric to assess FullStory's contacts with Pennsylvania—such as FullStory's direct participation in the wiretapping giving rise to the claims and its active efforts to serve the Pennsylvania market for website user behavior analytics—and instead applied a strict version of the "*Calder* effects test" to find that it could not exercise personal jurisdiction because FullStory did not "expressly aim" its conduct at Pennsylvania?

2.     Did the district court err when it failed to use this Court's factors for determining whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, leading it to determine that subjecting FullStory to personal jurisdiction in Pennsylvania would cause an "undue burden"?

3.     Did the district court err by denying Hasson's motion for leave to take jurisdictional discovery based on its belief that any additional contacts between FullStory and Pennsylvania that might be discovered would be "irrelevant" to the specific jurisdiction analysis?

Hasson preserved his issues: Pl.'s Resp. in Opp. to Mot. to Dismiss, ECF 34 at 4–10; Appx115 (Pl's Mot. for Jurisdictional Discovery); ECF 33 (Br. in Supp.). Despite these arguments, the district court dismissed for lack of personal jurisdiction and denied the request for jurisdictional discovery. Appx1–13.

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

There are two related cases pending before this Court: *Schnur v. Papa John's International, Inc.*, Case No. 23-2573 (3d Cir.) and *Cook v. GameStop, Inc.*, Case No. 23-2574 (3d. Cir.).

<u>**STATEMENT OF THE CASE**</u>

**I.     FullStory procures companies—in and out of Pennsylvania—to install its wiretap script on their websites.**

FullStory is a web-based software company which touts itself as being able to "create[] a pixel-perfect rendition[] of user journeys" and "recreate[] the view that [] users' see in their browsers by faithfully reconstructing all of the captured events exactly as they occurred during users' experience." Appx35 ¶¶ 48–49, Appx40–43 ¶¶ 71–74. FullStory's software functions as a wiretap device to intercept web communications.

To effectuate the wiretap, FullStory created a "small snippet" of JavaScript computer code that is "designed to be unnoticeable to any user" (the "FullStory Script" or "Session Replay Code"). Appx33–34 ¶ 42. Once the FullStory Script deploys on a website visitor's browser, it intercepts the user's communications with the website by sending a continuous, instantaneous stream of "event data" to *FullStory's* servers. Appx29 ¶ 23, Appx33–34 ¶ 42. "As a user interacts with any website with the embedded FullStory script, each click, tap, URL visit, and every other interaction is sent in tiny little packets to that existing session at FullStory servers." Appx35–36 ¶ 51 (footnote and quotation marks omitted).

Upon deployment, the FullStory Script captures users' website communications in real time, instantly recording every event, keystroke, movement, and/or click in real time. Appx33–34 ¶ 42, Appx40–43 ¶¶ 71–74. For

6

example, if a website user adds a product to his or her cart, that communication is instantaneously intercepted by FullStory. Appx40–41 ¶ 73. Likewise, if a website user uses the chat function, which prompts the user to enter personal information, that personal information—along with the entire chat—is instantaneously intercepted by FullStory. Appx41–43 ¶ 74 (screenshots depicting FullStory intercepting a user's email address and phone number).

The interception of these website communications enables FullStory to capture website visitors' names, emails, phone numbers, addresses, social security numbers, dates of birth, and more. Appx34–35 ¶ 47. The FullStory Script also captures website users' IP addresses and geolocation data, which it can use to segment users by country, state, or city. Appx37 ¶ 56. The more a user interacts with websites where the FullStory Script is embedded, the more information FullStory receives and learns about the user. Appx36 ¶ 54.

FullStory's Script is installed on millions of websites nationally by companies that pay FullStory to wiretap their website users. Appx33 ¶ 40. In his First Amended Complaint, Hasson alleged that FullStory actively seeks to serve the market for website analytics software in Pennsylvania, and as a result of its efforts, it is able to monitor, collect, and record the website communications of Pennsylvanians. Appx33 ¶ 40. Hasson alleged FullStory targeted its services to both Pennsylvania companies who maintain a website in Pennsylvania as well as

national websites that do business in Pennsylvania. Appx25 ¶ 8. As a result, FullStory knew that its practices would directly result in the collection of information from Pennsylvanians while they were in Pennsylvania. Appx25 ¶ 8.

FullStory chose to avail itself of the business opportunity of collecting real-time data from website visitor sessions initiated by Pennsylvanians. Appx25 ¶ 8. As explained in more detail below, this purposeful availment of Pennsylvania gave rise to the causes of action alleged here by Hasson.

## II.    FullStory deployed its wiretap Script on Hasson's browser in Pennsylvania and wiretapped Hasson's communications with Mattress Firm's website.

Mattress Firm is one of the many companies that FullStory procured to wiretap its website visitors by installing the Script on its website. Appx 33 ¶ 40, Appx39–40 ¶¶ 67–71. Plaintiff-Appellant Hasson is a Pennsylvania citizen. Appx24 ¶ 5. While in Pennsylvania, Hasson browsed Mattress Firm's website at www.mattressfirm.com. Appx39 ¶ 67. Hasson browsed for different products, using his mouse and keyboard to interact with the website. Appx40 ¶ 70. Though Hasson never purchased anything from Mattress Firm's website during his visit, he added a product to his cart and entered his personal information in the checkout text fields—including his Pennsylvania address. Appx40 ¶¶ 70–71.

When Hasson navigated to the Mattress Firm website, unbeknownst to Hasson the FullStory Script software deployed on Hasson's browser. This occurred

where Hasson lives and was located—in Pennsylvania. Appx29 ¶ 23, Appx39–40 ¶¶ 67–72. As a result of that wiretap, Hasson's keystrokes, mouse clicks, device and browser information, IP address, geolocation, and other electronic communications between Hasson and Mattress Firm were intercepted in real time by FullStory, including Hasson's home address. Appx40–44 ¶¶ 68–77, Appx45–47 ¶¶ 81–86.

## III. Through its geolocation tracking, FullStory knew its wiretap was being deployed in Pennsylvania, and FullStory gained an economic advantage from that geographical tracking.

The ostensible purpose of Session Replay Code is to permit website owners access to more detailed data regarding how visitors interact with the site, which may help the website owner make improvements to the site's functionality. Appx28 ¶¶ 21–22; *see also* Def.'s Br. in Supp. of Mot. to Dismiss, ECF 28 at 1–2 (arguing and agreeing that Session Replay software helps "companies improve the design and user experience on their websites" and enables a website operator to "identify, troubleshoot, and remediate bugs on its website.").

During the wiretapping, FullStory's Script also collects and logs users' geographical locations. As a result, FullStory knowingly monitored, captured, and recorded both website communications and location data from Pennsylvania residents, including Hasson. Appx33 ¶ 40, Appx37 ¶ 56, Appx37–38 ¶ 58. Hasson's experience was not a one-off. Through its own records, FullStory was

9

well aware that its wiretaps were directed at—and intercepted communications

of—Pennsylvania residents within the borders of Pennsylvania, like Hasson.

Appx33 ¶ 40, Appx37 ¶ 56, Appx37–38 ¶ 58.

Indeed, FullStory does not just capture and store the intercepted

communications on its servers passively. FullStory organizes the captured data into

useful analytical data for its clients, the website operators. Appx36 ¶¶ 52–55.

FullStory does this by creating aggregations of visitor behavior, by bundling

sessions of an individual user together, and by attempting to deanonymize visitors.

Appx36 ¶¶ 52–55. By using the geolocation data as part of its analytics package,

FullStory aggregates communications based on country, state, and city of the user,

and then provides its client-website operators the ability, for a fee, to sort the

intercepted sessions based on that "fairly accurate" location data. Appx37 ¶¶ 56–

58. Jurisdictional discovery, if it had been allowed, likely would show that

FullStory intercepted millions, if not billions, of Pennsylvanians' website visits by

deploying its wiretap on Pennsylvania citizens' devices within the bounds of

Pennsylvania, before and after its interception of Hasson's communications.

The capture and aggregation of the intercepted data is central to FullStory's

business model of selling access to the session replay user data back to website

owners. *See* Appx32–37 ¶¶ 38–58. Indeed, a Vice President of Engineering at

FullStory declared in other litigation that FullStory's Script is "the company's most

valuable asset," and that session replay functionality "is the primary service that FullStory provides to its clients."[1] The data FullStory captures through its wiretap has immense economic value, and FullStory capitalized on the monetization of that data, including by categorizing Hasson and other Pennsylvanians' data based on their geolocation in Pennsylvania where the FullStory Script deployed on their browser. Appx25–27 ¶¶ 10–14, Appx32–33 ¶¶ 38–40.

## IV. Causes of action, FullStory's motion to dismiss, and Hasson's request for jurisdictional discovery.

Hasson initiated his action in the district court against FullStory on August 30, 2022, Appx18, and he amended his complaint on December 27, 2022. Appx19, at ECF 23. Hasson asserted two claims, one for violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. § 5701, *et seq.*, and another for the common law tort of invasion of privacy / intrusion upon seclusion. Appx49–51 (stating WESCA claim); Appx51–53 (stating intrusion upon seclusion claim).

Hasson brought the claims as a class action on behalf of himself and "[a]ll natural persons in Pennsylvania whose Website Communications were captured in Pennsylvania through the use of FullStory software." Appx47 ¶ 87.

---

[1] Decl. of Daniel Kuebrich, ¶¶ 2–3, ECF No. 64-4, *Saleh v. Nike, Inc.*, 2:20-cv-9581 (C.D. Cal.).

On January 23, 2023, FullStory moved to dismiss the first amended complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), or alternatively for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Appx20, at ECF 27. Hasson timely responded in opposition on February 13, 2023. Appx20, at ECF 34.

The same day that Hasson responded in opposition to the motion to dismiss, he moved for leave to conduct jurisdictional discovery related to FullStory's contacts with Pennsylvania. Appx20, at ECF 32–33; Appx115.

## V. The district court's order granting FullStory's Rule 12(b)(2) motion and denying Hasson's request for jurisdictional discovery.

On July 25, 2023, the district court denied Hasson's motion for leave to take jurisdictional discovery and granted FullStory's motion to dismiss, finding that there was no basis on which exercise specific personal jurisdiction over FullStory. Appx5–13. The district court held that FullStory had not expressly aimed its wiretapping activity at Pennsylvania. Appx6–10. Moreover, the district court denied jurisdictional discovery, holding that discovery into FullStory's contacts with Pennsylvania—including its contracts with Pennsylvania websites and the number of other Pennsylvania individuals of whom FullStory intercepted the communications—did not "relate to Mr. Hasson's claims against FullStory." Appx10–11.

Plaintiff timely filed his Notice of Appeal on August 22, 2023. Appx14.

# SUMMARY OF THE ARGUMENT

The defendant's purposeful engagement with the forum is the first and most significant factor a court must consider while doing a specific jurisdiction test. The district court here failed to conduct *any* thorough analysis of FullStory's contacts with Pennsylvania, and instead jumped to the conclusion that FullStory did not expressly aim any tortious conduct at Pennsylvania. That finding was incorrect and would not have been a sufficient, dispositive basis to deny jurisdiction even if it were accurate. "Express aiming" is not a requirement when a claim arises out of or relates to a defendant's regular, intentional business activity within a forum. That standard was met here because Hasson's claims arise directly out of FullStory's purposeful wiretapping of communications *in Pennsylvania*. That activity in Pennsylvania was part of FullStory's regular business, not isolated or sporadic.

The district court erred as a matter of law because it did not apply the right legal standard. The court used an incorrect version of the "effects" test but *did not* discuss the traditional purposeful availment test, under which Pennsylvania's jurisdiction over FullStory is undoubtedly proper for these claims. At a minimum, this Court must vacate and instruct the district court to permit jurisdictional discovery (which it improperly denied) and then use the correct standard, starting with an assessment of FullStory's purposeful contacts with Pennsylvania, including the amount of wiretapping and related business it did here.

But this Court can and should simply reverse—which will save the district court and the parties time and resources—because Hasson's allegations more than met his burden to show a *prima facie* basis for personal jurisdiction at the pre-discovery Rule 12 stage. Hasson's claims could *only* arise out of FullStory's contacts with Pennsylvania because there would be no claims at all but for FullStory's development of wiretapping software, intentional dissemination of that software to companies doing business in Pennsylvania, and its knowing receipt and economic exploitation of intercepted communications emanating from Pennsylvania.

If these wiretaps were a building, that building would be located in Pennsylvania, and FullStory would be the architect, the builder, and the selling property agent. FullStory is the architect because it designed the software that causes the wiretaps. FullStory is the builder because its software establishes an open conduit between a website visitor's browser and FullStory's own servers, making FullStory itself the interceptor and the recipient of the wiretapped communications. FullStory is the selling agent because it uses those intercepted communications to create and sell valuable analytical distillations of the wiretapped data back to website operators. Indeed, this last part is FullStory's primary method of making money.

That FullStory convinced Mattress Firm to deploy FullStory's script on its website does not defeat jurisdiction, nor does the fact that FullStory is wiretapping people all over the country. Those facts do not change FullStory's claim-related contacts with Pennsylvania. But the district court lost sight of the issue in question and gave exclusive consideration to those facts. The facts that are most important in the jurisdictional analysis are that FullStory intentionally wiretapped Hasson *in Pennsylvania*, wiretapped countless other Pennsylvanians in Pennsylvania, and used these intercepted communications from Pennsylvania to make money by selling this data back to website operators, including by allowing website operators to filter website sessions based on which website visitors came from Pennsylvania.

The district court also erred in holding that exercising jurisdiction in Pennsylvania would impose an "undue burden" on FullStory simply because FullStory is a Georgia company. FullStory knows it is building wiretaps in Pennsylvania and earning money from the communications it collects, and it cannot reasonably claim surprise at being asked to answer privacy claims in Pennsylvania. Pennsylvania's interest in protecting the privacy of its citizens' communications while they are in Pennsylvania far outweighs any interest Georgia or Texas have in these claims, and the district court failed to identify any grounds to support its "undue burden" finding.

This is a straightforward and easy case for the application of specific jurisdiction because Hasson's claims are precisely about FullStory's communicative contacts with Pennsylvania, and nothing else.

## STANDARDS OF REVIEW

This Court reviews the district court's decision regarding personal jurisdiction *de novo*. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). While the plaintiff bears the burden of demonstrating facts which will establish personal jurisdiction, this Court must accept all of Plaintiff-Appellant Hasson's allegations as true and construe those facts that are in dispute in favor of Hasson. *Id.* (internal citations omitted).

The district court's decision to deny jurisdictional discovery is reviewed for abuse of discretion. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003)

## ARGUMENT

## I.     Applicable Legal Standards

A district court sitting in diversity may assert personal jurisdiction over a

nonresident defendant to the extent permitted under the law of the forum state.

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

### A.     Pennsylvania courts exercise personal jurisdiction up to the limits of the Constitution.

Under Pennsylvania's "long-arm" statute, Pennsylvania courts may exercise

personal jurisdiction "to the fullest extent allowed under the Constitution of the

United States and … based on the most minimum contact with this Commonwealth

allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b);

*see also id.* § 5322(a) (enumerating various, broad bases for jurisdiction such as

"[t]ransacting any business in this Commonwealth" and "[c]ausing harm or

tortious injury in this Commonwealth" by an act or omission made *either within or*

*outside* Pennsylvania).

"The [long-arm] statute simply extends jurisdiction to anyone who causes

harm or tortious injury, intentionally or not, in Pennsylvania through acts or

omissions outside Pennsylvania." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,

149 F.3d 197, 201 (3d Cir. 1998).

**B.** **The exercise of personal jurisdiction is proper when a defendant purposefully directs its activities into the forum and the claims at issue arise out of or relate to those activities.**

As interpreted by the Supreme Court, the Fourteenth Amendment's Due Process Clause limits a federal court's exercise of personal jurisdiction to cases in which the defendant's "contacts" with the forum are such that "'the maintenance of the suit' is 'reasonable …' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor*, 141 S.Ct. at 1024 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

When a corporate defendant is sued in a forum other than its state of incorporation, principal place of business, or a state where it is "essentially at home," the question becomes whether the court may exercise "specific" (also called "case-linked") jurisdiction. *See Ford Motor*, 141 S.Ct. at 1024. Specific jurisdiction may be exercised when a defendant is carrying on "part of its general business" in the state, and "the cause of action arises out of the very activity being conducted." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) (citation and quotation marks omitted).

"A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

Specific jurisdiction analysis entails two key "prongs." "First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state…. Second, the contacts must give rise to—or relate to—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (quoting *Ford Motor*, 141 S.Ct. at 1024–25).

The second prong—that the plaintiff's claims must "arise out of *or relate to* the defendant's contacts with the forum"—*does not* require a "strict causal relationship" between the defendant's in-forum activity and the plaintiff's claim. *Ford Motor*, 141 S.Ct. at 1026 ("The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing.").

When these two key prongs are satisfied, the exercise of jurisdiction is proper, provided that it "otherwise comports with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

The purposes of these limitations are two-fold. First, to treat defendants fairly and ensure they are only haled into courts where they have had "fair warning" that "a particular activity" may subject them to jurisdiction. *Ford Motor*, 141 S.Ct. at 1025 (quoting *Burger King*, 471 U.S. at 472). This safeguard allows defendants to "structure their primary conduct with some minimum assurance as to where that

conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Second, the limitations protect "interstate federalism," and "ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford Motor*, 141 S. Ct. at 1025 (quoting *World-Wide Volkswagen*, 444 U.S. at 293, and *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1780 (2017)).

**C.  If a district court believes additional factual specificity is required to establish a defendant's contacts with the forum, it should permit jurisdictional discovery unless the claim is "clearly frivolous."**

"[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." *Toys "R" Us*, 318 F.3d at 456 (quoting *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' … the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "[J]urisdictional discovery generally relates to corporate defendants and the question of whether they are 'doing business' in the state." *Massachusetts Sch. of L. at Andover*, 107 F.3d at 1042.

**II.    The district court applied the wrong test, leading it to incorrectly conclude that Hasson's claims did not arise out of or relate to FullStory's purposeful contacts with Pennsylvania.**

Hasson's allegations showed that FullStory availed itself of Pennsylvania and that Hasson's claims arose directly out of those contacts, but the district court ignored those contacts and that connection, and instead relied only on an overly strict application of the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). The district court began and ended its analysis with the "express aiming" prong of the *Calder* "effects test." Appx7–9. The district court found that Hasson's claims "relate to his use of the Mattress Firm website," but that FullStory did not expressly aim its conduct at Pennsylvania because Mattress Firm "is a Texas company," and nothing else FullStory did in Pennsylvania was relevant. Appx8–9.

This cursory analysis fell far short of a proper test of the defendant's contacts with the forum and whether the claim arises out of or relates to those contacts. FullStory had many claim-related contacts with Pennsylvania and the location of its "contract" with Mattress Firm is a classic red herring because it is not a significant fact compared to FullStory's purposeful and direct acts of wiretapping *within Pennsylvania*, which is what Hasson's claims are about. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 148 (3d Cir. 1992) ("If allegedly tortious acts committed outside the forum state and causing effects within that state can suffice for the exercise of personal jurisdiction over a nonresident under the effects test,

then clearly an allegedly tortious act committed within the forum state, which causes injury to a resident of that state, also conforms with due process.").

As this Court and others have explained, where a state exercises personal jurisdiction up to the constitutional limit, the first step of a specific jurisdiction analysis requires assessing the nonresident defendant's contacts with the forum. *See Pennzoil Prods.*, 149 F.3d at 201 ("First, a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have reasonably anticipated being haled into court there.") (cleaned up); *see also Toys "R" Us*, 318 F.3d at 456 ("The [district] court's unwavering focus on the web site precluded consideration of other Internet and non-Internet contacts—indicated in various parts of the record—which, if explored, might provide the 'something more' needed to bring [defendant] within our jurisdiction."); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) ("In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant."); *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022) ("In performing the minimum contacts analysis, we identify all contacts between the nonresident defendant and the forum state and ask whether, individually or collectively, those contacts satisfy the relevant criteria.").

The district court ran directly afoul of the holding in *Ford Motor* when it opined that evidence of FullStory's ongoing business engagements in Pennsylvania was "irrelevant" because "those contacts do not relate to Mr. Hasson's claims." Appx8. In *Ford Motor*, the Supreme Court expressly rejected the argument that the connection between the plaintiff's claim and the defendant's forum contacts must be "exclusively causal." 141 S.Ct. at 1029. A strict "causal connection" was lacking because *every* action by Ford directly related to the vehicle accidents giving rise to the claims occurred outside of the forum: the design, manufacture, and initial sales of the accident vehicles all happened entirely in states other than Montana and Minnesota, the states where the plaintiffs' claims were brought. *Ford Motor*, 141 S.Ct. at 1023. The specific accident vehicles in question only made their way to those states after secondary market sales and the transportation of the vehicles into those states by persons other than Ford. *Id.*

The Supreme Court held that personal jurisdiction over Ford was proper in Montana and Minnesota despite this gap in the causal chain between its actions and the claims, focusing first on "the business that the company regularly conducts" in those states, such as extensive marketing and sales of the same vehicle models, continuous maintenance services, and distribution of replacement parts. *Id.* at 1028. In view of that foundation of Ford's acts of purposeful availment, jurisdiction was proper because "Ford systematically served a market" in the

forums for the vehicle types in question, and the plaintiffs' residences, use of the vehicles in the forums, and occurrences of the accidents in the forums all contributed to form a "strong relationship among the defendant, the forum, and the litigation." *Id.* (quotation marks omitted).

This case features even stronger connections between FullStory, Pennsylvania, and Hasson's claims than were present in *Ford Motor*. Hasson's allegations about FullStory's wiretapping of Pennsylvanians and its efforts to see its wiretapping technology installed on the websites of Pennsylvania-based companies shows that FullStory's connections to Pennsylvania were purposeful, extensive, and direct, and those connections alone form the *entire* basis of Hasson's claim. The district court's failure to weigh—let alone discuss or analyze—all of these contacts was by itself an error that requires reversal.

### A. FullStory purposefully availed itself of Pennsylvania by broadly disseminating its Script with the knowledge and intent that it would intercept communications in Pennsylvania.

If the district court had performed the correct test, it would have seen that FullStory's claim-related contacts with Pennsylvania met or exceeded the standard set forth in *Ford Motor*.

The district court's analysis does not mention FullStory's direct role in creating a wiretap on Hasson's browser in Pennsylvania and intercepting Hasson's communications, which all occurred in Pennsylvania. Nor did the court give

consideration to Hasson's allegations that FullStory deliberately entered the market for the collection and analysis of Pennsylvanians' website communications by contracting with companies based in Pennsylvania as well as those, like Mattress Firm, that are not citizens of Pennsylvania but have large Pennsylvania customer bases.

In its section applying the law to the facts of this case, the district court summed up FullStory's role as: "FullStory contracted with a Texas company to embed software on its website, and the information that was captured from Mattress Firm's website was received by Mattress Firm." Appx8. That summary includes one massive misstatement and completely omits the three facts most critical to the jurisdiction analysis.

First, the massive factual error is that Hasson's communications were not "captured from Mattress Firm's website." Appx8. They were captured from *Hasson's device in Pennsylvania.* The three facts the district court elided when describing FullStory's conduct were: 1) FullStory's direct wiretapping of Pennsylvanians in Pennsylvania, as described above; 2) FullStory's knowledge that it was wiretapping Pennsylvanians because—in addition to the inevitability of wiretapping Pennsylvanians as a result of its business model—FullStory also obtained geolocation data as part of the intercepted transmissions; and 3) that FullStory gained economic advantage by selling the wiretapped communications

25

back to website operators in a digestible format, and part of FullStory's product offering was the ability to filter website visitors by locations, such as Pennsylvania.

Hasson's allegations gave detailed support to each of these critical facts. To show that the interceptions occurred in Pennsylvania, Hasson alleged: "[w]hen a website delivers Session Replay Code to a user's browser, the browser will follow the code's instructions by sending responses in the form of 'event' data to a designated third-party server." Appx29 ¶ 23; Appx34 ¶ 45 ("The FullStory Script deploys automatically, and the wiretapping commences immediately on the visitor's web browser when the visitor loads a website in their browser."). As a matter of law in this Circuit, a WESCA interception occurs "at the place where the communications are routed towards the third-party eavesdropper's servers," and with respect to Session Replay Software that means the interception occurred on Hasson's browser, not on Mattress Firm's website. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131–32 (3d Cir. 2022). That means the wiretap occurred in Pennsylvania, because that is where Hasson's computer was. Appx39 ¶ 67.

This is the *most significant* fact in the case because it establishes the essential element of Hasson's claim and demonstrates *where* the tortious interception occurred: Pennsylvania. *See, e.g.*, *Walden*, 571 U.S. at 287–88 (explaining that in *Calder*, California jurisdiction over Florida defendants was proper because their actions caused the tort and injury to occur in California, even

if they acted primarily within Florida); *Carteret*, 954 F.2d at 147–48 (noting that a defendant's commission of torts within the forum state presents a "stronger case" for personal jurisdiction than when a defendant's out-of-forum acts cause injurious effects in the forum). Here, both FullStory's tortious actions and Hasson's injury occurred in Pennsylvania.

With respect to the other facts the district court failed to include in its summarization, Hasson alleged that "FullStory contracts to provide its software to Pennsylvania companies and websites" and "targeted its services to Pennsylvania companies who maintain a website in Pennsylvania, as well as national websites that do business in Pennsylvania" and "knew that its practices would directly result in collection of information from Pennsylvania citizens while those citizens browse[d] websites in Pennsylvania." Appx25 ¶ 8, Appx 33 ¶ 40. All of these contacts relate to FullStory's Script and its wiretapping activities—the same activities that gave rise to Hasson's claims.

Under *Ford Motor*, these facts are critical to the question of whether Hasson's claims arise out of or relate to FullStory's purposeful contacts with Pennsylvania. *See Ford Motor*, 141 S.Ct. at 1028–29 (assessing all of Ford's efforts to market, sell, and service Crown Victorias and Explorers in Minnesota and Montana). There is no authoritative support for the district court's belief that these facts were "irrelevant." Appx8.

The fact that these contacts occurred electronically using Internet-based technology should not result in an outcome different from the one that would obtain if the claims involved older technologies. First, the defendant's physical presence in a forum is not a requirement to establish personal jurisdiction, nor has it been for many decades. *See Walden*, 571 U.S. at 283 (citing *Int'l Shoe*, 326 U.S. at 316 (1945), and *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[A] substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King,* 471 U.S. at 476. "So long as a commercial actor's efforts are 'purposefully directed' towards residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Id.* "'Presence' in the state … has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on." *Int'l Shoe*, 326 U.S. at 317.

Regardless of the technological form of communication, a defendant's communicative links with a forum *do* create a sufficient contact for personal jurisdiction purposes when the claim arises specifically out of those communications. *See generally Johnson v. Griffin*, 85 F.4th 429, 431–32, 435 (6th Cir. 2023) (Kathy Griffin's tweets from California about a kerfuffle in a Tennessee hotel were sufficient by themselves to subject her to jurisdiction in Tennessee for

claims that the tweets tortiously interfered with the employment of a man involved in the dustup); *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216 (10th Cir. 2021) (phone calls to Colorado residents subjected Florida company to personal jurisdiction in Colorado for claims that the calls were illegal robocalls, despite defendant's claim that it believed it was directing the specific call to Vermont, where the plaintiff's phone was registered).

Although Mattress Firm's website initially sent the FullStory Script to Hasson's browser, it is FullStory's own creation, the Script, that actually initiates the wiretap, and FullStory maintains a direct role in that process because *FullStory receives* the intercepted communications, arranges those communications into a commercially valuable format, and then gives Mattress Firm access to that analyzed and organized data. Those are direct contacts with Pennsylvania and they are the precise contacts that gave rise to Hasson's claims. For that reason, the exercise of personal jurisdiction was proper under *Ford Motor* and all other precedents of the Supreme Court and this Court.

1.   **The district court erred by relying on cases in which a website's *accessibility* formed the only potential contact with the forum. This case is much different.**

The district court mistakenly believed Hasson's claims had something to do with FullStory's website—rather than its direct wiretapping of Hasson—or that Hasson was relying on the accessibility of FullStory's website to form the

necessary contact with Pennsylvania. Neither is true, and the district court's citations to two cases in that mode are glaring *non sequiturs* that indicate the district court did not grasp that nature of Hasson's claims and was not focusing on the right types of contacts FullStory established with Pennsylvania. *See* Appx7–8 (citing cases about website contacts and proclaiming "[m]ere operation of a website does not cause a website provider (or a third-party vendor) to expressly aim its conduct at the forum state.").

First, the district court wrote: "similar cases have held that a website is not expressly aimed at a forum state based only upon the plaintiff's accessing the website within his or her home state." Appx7 (citing *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142–43 (4th Cir. 2020)). Nothing about this case is similar to *Fidrych*. In that case, the plaintiff suffered physical injury at a hotel in Milan, Italy, and sued the hotel operator in South Carolina, where plaintiff resided. *Fidrych*, 952 F.3d at 128. The Fourth Circuit found that the plaintiff's claim did not arise out of Marriott's operation of hotels within South Carolina, leaving the accessibility of Marriott's website in South Carolina as the only potentially relevant contact the claim could arise out of or relate to. *Id.* at 128–29. But the plaintiff did not even book the hotel room himself from South Carolina. *Id.* at 129 ("[T]he reservations for the trip were handled by a member of [plaintiff's] work team, who used a travel agency…").

The district court also cited to *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001), for the proposition that "[m]ere operation of a website" does not constitute express aiming at the forum state. Appx8. That quote comes from one limited part of *Remick* concerning a misappropriation of likeness claim based on two defendants' operation of a website that posted a single photograph including the plaintiff's image. *Remick*, 238 F.3d at 259.[2]

These cases are not on point. Hasson did not suggest that FullStory's own website formed an independently sufficient contact with Pennsylvania that Hasson was relying upon to establish personal jurisdiction. By contrast, Hasson contends that FullStory directly and purposefully reached into Pennsylvania using technology of its own design, and wiretapped Hasson while he was in Pennsylvania. His claim is about those acts of wiretapping in Pennsylvania, not tortious acts or injuries that occurred in a different state or foreign country.

If the district court was going to take anything away from these cases, it should have been the glaring factual differences between them and Hasson's

---

[2] Notably, other parts of that decision discussing other claims did find personal jurisdiction was proper as a result of the defendants' contacts with Pennsylvania, including through telephone calls, letters, and fax communications. *See Remick*, 238 F.3d at 256–57 (finding jurisdiction proper for breach of contract claim); *id.* at 260 (finding jurisdiction proper for tortious interference claim).

claims. The district court should have recognized that these telltale distinctions *all cut in favor* of exercising personal jurisdiction here.

Unlike the facts in those cases, much of FullStory's claim-related conduct did occur within Pennsylvania, as explained above. Further, as explained in the next section, FullStory gained economic advantage from the wiretaps after they occurred by translating them into a useful digest and making them available again to website operators like Mattress Firm, and FullStory specifically touted its ability to show website operators where their visitors were geographically located, meaning FullStory knew Hasson and others were based in Pennsylvania when engaging in the communications that FullStory intercepted.

**B.    FullStory not only knew it was continuously receiving intercepted communications from Pennsylvania, it also gained economic advantage from its ability to show website operators which visitors were located in Pennsylvania.**

FullStory's claim-related contacts with Pennsylvania did not end with the placement of the FullStory Script on the Mattress Firm website and others, as the district court's analysis implies. Once the FullStory Script took hold on a website visitor's browser, it intercepted the user's communications with the website by sending a continuous, instantaneous stream of "event data" to *FullStory's* servers. Appx29 ¶ 23, Appx33–34 ¶ 42. "As a user interacts with any website with the embedded FullStory script, each click, tap, URL visit, and every other interaction

is sent in tiny little packets to that existing session at FullStory servers." Appx35–
36 ¶ 51 (footnote and quotation marks omitted).

FullStory does not just receive and store these transmissions on its servers
passively. FullStory uses these intercepted communications by organizing them
into useful analytical data for its clients, the website operators. FullStory does this
by creating aggregations of visitor behavior, by bundling sessions of an individual
user together, and by attempting to deanonymize visitors. Appx35 ¶¶ 52–55.
FullStory also attempts to find and log users' geographical locations so that
website operators can sort session data by location, and FullStory's own
publications claim this process is "fairly accurate" at the country and state level,
and less so at the city level. Appx37 ¶¶ 56–58.

These allegations defeat any argument that FullStory was wholly ignorant
of, or indifferent to, the fact that it was specifically wiretapping Pennsylvanians
and earning revenue from those activities. Other circuits have held that defendants
who knowingly benefit from engagement with forum residents in similar
circumstances have purposefully availed themselves of the forum, even if they
operated on a national or international scale. *See UMG Recordings, Inc. v.
Kurbanov*, 963 F.3d 344, 353–54 (4th Cir. 2020) (rejecting arguments that Russia-
based website owner's Virginia contacts were fortuitous, and finding that owner's
acts of collecting and selling Virginian visitors' data, including location data,

showed purposeful availment because they enabled defendant to earn revenue);

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1230 (9th Cir.

2011) (finding that website owner's sale of advertising targeted to California

residents supported exercise of personal jurisdiction in California); *Crumpton v.*

*Haemonetics Corp.*, 595 F. Supp. 3d 687, 699 (N.D. Ill. 2022) ("Haemonetics

deliberately took action to ensure the collection and storage of Illinois residents'

data, with Octapharma acting as an intermediary to deploy Haemonetics'

technology. This intervening step does not alter the fact that Haemonetics

deliberately exploited the biometric collection market in Illinois."); *cf. uBID, Inc.*

*v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010) (rejecting argument

that defendant with a national presence was indifferent to the volume of business it

did in the forum state when it "earns many millions of dollars annually" from

forum residents).

  **C.**  **FullStory's contacts with Pennsylvania were intentional,**
     **extensive, and continuous; not random, fortuitous, or attenuated;**
     **and FullStory's contacts with Pennsylvania did not result from**
     **Hasson's unilateral activity.**

  Hasson was not "the only link between the defendant and the forum," and

the district court erred in presuming that construct applied here. Appx7 (quoting

*Walden*, 571 U.S. at 285–86). FullStory argued below that Hasson's injury "would

have occurred no matter the state [Hasson] was in." Def.'s Br. in Supp. of Mot. to

Dismiss, ECF 28 at 6. That rhetorical flourish is factually and legally inaccurate,

but it likely invited the district court's error by creating the false impressions that Hasson chose to be wiretapped or that FullStory was not otherwise wiretapping anyone in Pennsylvania.

Hasson's claims are Pennsylvania statutory and common law claims that arise out of FullStory's wiretapping of Hasson's computer in Pennsylvania. These claims could not have arisen in another state, and Hasson could not possibly cause FullStory to wiretap in Pennsylvania if FullStory had not intentionally set upon the path to create that connection.

The case cited by the district court, *Walden*, provides a helpful illustration of what the Supreme Court means by a "fortuitous" connection with a forum, or a connection created by a plaintiff's unilateral actions. In *Walden*, two individuals were traveling from Puerto Rico to Las Vegas, via Atlanta, with a large sum of cash that was noticed by government agents in Puerto Rico. *Walden*, 571 U.S. at 279–80. Those agents notified counterparts in Atlanta, who engaged the travelers and seized the cash during their layover in Atlanta. *Id.* at 280. The travelers brought suit in Nevada against a Georgia-based police officer for his role in the Atlanta airport interdiction, which they contended was an illegal search and seizure. *Id.* at 279–81. The travelers also contended that after the seizure, the officer submitted a false probable cause affidavit, which delayed the return of the money to them in Nevada. *Id.* at 280–82.

The Supreme Court noted the "reality" that "none of [defendant's] challenged conduct had anything to do with Nevada itself," *id.* at 289, and held that even under *Calder*, the fact that the travelers suffered the delayed return of their funds while residing in Nevada did not establish a contact between the defendant and Nevada. *Id.* at 290.

Similarly, in *World-Wide Volkswagen*, the two pertinent defendants were a regional distributor and a retail dealer for Audi, but the record indicated that the defendants "carry on no activity whatsoever in Oklahoma" (the state where a car accident leading to the claims occurred), *World-Wide Volkswagen*, 444 U.S. at 295, and "there was no showing that any automobile sold by [defendants] has ever entered Oklahoma with the single exception of the vehicle involved in the present case." *Id.* at 289.

The only connection to Oklahoma was "the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma," and the plaintiffs' only available hook between that fortuity and the defendants was that it was arguably "foreseeable" that an automobile could cause injury in Oklahoma because it is mobile by design. *Id.* at 295. Although the Supreme Court held that foreseeability was not "wholly irrelevant" to a jurisdictional analysis, the relevant *kind* of foreseeability is that of harm occurring in the forum state because of the

*defendant's* "conduct and connection" with the forum, rather than an entirely unilateral act done by another. *See id.* at 297–98.

 *Walden* and *World-wide Volkswagen* bear no resemblance to this case. Hasson did not sue over the interception of a communication he had in a different forum, and his argument for jurisdiction does not rely solely on the fact that FullStory could foresee Hasson suffering a wiretap injury in Pennsylvania. Instead, FullStory itself *wiretapped Hasson in Pennsylvania*, and Hasson's claim could only arise because FullStory purposefully established those interceptive links between itself and Pennsylvania, voluntarily making itself the recipient and beneficiary of a tortious wiretap in the forum. When a defendant's contacts in the forum are a "predictable consequence" of a national business model, they are not "random, fortuitous, or attenuated." *See, e.g.*, *Mavrix Photo*, 647 F.3d at 1230; *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022) ("[D]escribing [defendant's] act of filling [plaintiff's] order as the unilateral act of the plaintiff is a mischaracterization. Here, [defendant] shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them. It cannot now point to its customers in Illinois and tell us, 'It was all their idea.'") (quoting *uBID, Inc.*, 623 F.3d at 428).

This dovetails with the key takeaway from *Ford Motor*: when a business is extensively engaged in the same exact conduct in the forum that could cause claims to arise out of the conduct, it cannot be surprised when it faces those kinds of claims in the forum, even if a given case features some incidental connections with other states. *See* 141 S.Ct. at 1028–30; *id.* at 1031 ("An automaker regularly marketing a vehicle in a State … has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there (regardless where it was first sold).") (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

In *Ford Motor*, the happenstance that the specific accident vehicles were initially sold by Ford in states other than Minnesota and Montana was not a controlling fact because Ford sold *so many* Crown Victorias and Explorers in those states that Ford could reasonably anticipate facing suits about their design or malfunction in those states. *See* 141 S.Ct. at 1028–30 (rejecting Ford's reliance on out-of-forum sales of accident vehicles where "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States.").

Here, the happenstance that Mattress Firm is headquartered in Texas is not controlling or even particularly important. FullStory knew its Script was actively wiretapping *many* Pennsylvanians, through *many* different websites. *See* Appx33 ¶ 40 (Hasson alleged that FullStory's Script was used on millions of websites).

Those websites included those operated by both national companies that regularly do business with Pennsylvania consumers through their websites, like Mattress Firm, and Pennsylvania-based companies. *Id.*

Armed with knowledge of these continuous wiretaps—which FullStory purposefully caused by writing code and offering analytical services specifically designed to achieve that result—FullStory was on fair notice that it was directly wiretapping Pennsylvanians and might face privacy claims from them in Pennsylvania.

If anything, the claims here arise *more* specifically out of FullStory's own direct contacts with Pennsylvania than the fact pattern in *Ford Motor*. FullStory's software product created a wiretap on Hasson's browser *in Pennsylvania*, and then FullStory itself directly captured and received Hasson's intercepted communications *from Pennsylvania*. That creates an unbroken throughline between FullStory's activities specifically within, and directed at, Pennsylvania and the claims Hasson brings. No similarly direct causal chain existed in *Ford Motor* because the accident vehicles were not even sold by Ford in the forum states. *See Ford Motor*, 141 S.Ct. at 1029.

The clearest distinction between the "unilateral activity of the plaintiff" cases and this one is that here, even after designing its Session Replay Script in Georgia (or wherever), FullStory still had the ability to control its behavior to

ensure that *no* Pennsylvanian would ever be able to sue FullStory for a wiretap in Pennsylvania. If it was concerned about whether the FullStory Script would create an illegal wiretap in Pennsylvania when placed on a client's website, FullStory could have shut off its servers, or could have reconfigured its Script so it would not intercept communications of individuals located in Pennsylvania. Or it could have been even more proactive and refrained from allowing website operators to integrate the FullStory Script unless they took measures to ensure no Pennsylvanians' communications would be intercepted without their informed consent.

By contrast, the defendants in *Walden* and *World-Wide Volkswagen* had no such control after their initial actions in their home states. In *Walden*, under the plaintiffs' theory (which the Supreme Court rejected), the defendant police officer could have been sued anywhere the plaintiffs chose to reside after the officer participated in the seizure of their cash in the Atlanta airport. In *World-Wide Volkswagen*, under the plaintiffs' theory (which the Supreme Court rejected), the East-Coast-based defendants could have been sued in any state where the plaintiffs drove their car and had an accident after purchasing it in New York. Those defendants did not deliberately, systematically, and continuously interact with the forum states in the way FullStory did here, and they could not have altered their

behavior to avoid being sued in any particular states the way FullStory could have avoided being sued in Pennsylvania.

If FullStory's argument is that Hasson would have been *wiretapped* anywhere he accessed Mattress Firm's website—or any other website running FullStory script—that is the fault of FullStory for engaging in wiretapping on a broad scale. It was not Hasson's actions that brought FullStory's wiretapping to Pennsylvania.

**D.** **The district court incorrectly approached the *Calder* "effects" test as if it required a *stricter* jurisdictional analysis for intentional torts than the traditional purposeful availment test.**

*Calder's* "effects test" supplies an alternative test that may be used for intentional tort claims. *Calder*, 465 U.S. at 789–90. Importantly, it is *more* relaxed in some ways than the traditional test, in that its general purpose is for cases in which a defendant's "contacts with the forum alone … are far too small to comport with the requirements of due process" under the traditional minimum contacts analysis. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (quoting *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)). "The effects test is a theory of personal jurisdiction typically invoked where … the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732

F.3d 161, 173 (2d Cir. 2013). Separate satisfaction of the effects test is not a prerequisite "where the conduct on which the alleged personal jurisdiction is based occurs *within* the forum." *Id.* (emphasis in original).

The district court held that FullStory did not "expressly aim" its conduct at Pennsylvania because Mattress Firm is a Texas company, but the district court failed to analyze FullStory's contacts with Pennsylvania and even held that evidence of FullStory's efforts to establish its session replay business in Pennsylvania were "irrelevant." Appx8–9. That was a misapplication of the *Calder* test.

In cases like this where the defendant's purposeful contacts with the forum readily satisfy the first prong of the traditional purposeful availment test, it does not make sense to apply the "express aiming" requirement of *Calder* in a way that defeats jurisdiction if a defendant purposefully maintains similarly robust contacts with other states. There is no reason that acting with intentionality against a wider scope of victims should be factored in the defendant's favor under a due process analysis. *See Burger King*, 471 U.S. at 474 ("[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."). A defendant's choice to commit torts in a large number of different areas simply means the defendant should reasonably expect that it may be sued in a larger number of forums.

Other circuits recognize that a defendant's targeting of a national market does not diminish the purposefulness of the defendant's availment of the forum state or the appropriateness of personal jurisdiction. *See Johnson*, 85 F.4th at 435 ("By also sending these tweets to every state in the country through her two million followers, [plaintiff] does not inoculate herself from personal jurisdiction in a targeted state."); *Knox v. MetalForming, Inc.*, 914 F.3d 685, 692 (1st Cir. 2019) ("[T]he question is not whether a defendant sells its product across the U.S.; it is instead whether a defendant's forum connection is such that the exercise of jurisdiction is essentially voluntary and foreseeable.") (quotation marks and citation omitted); *uBID, Inc.*, F.3d at 428–29 (rejecting the defendant's attempt to "distance itself from Illinois by casting the Illinois market as simply one among many, a place of no particular interest to it," and citing *Keeton* for the notion that "what mattered was that the magazine had purposefully directed its business activities towards New Hampshire just as it had toward all other states," and rejecting the theory of "unilateral" initiation).

FullStory's wiretapping of Hasson was not a random event caused solely by the actions of Mattress Firm or Hasson, but rather an inevitability caused by FullStory's intentional deployment of its FullStory Script across millions of websites, which necessarily meant that Pennsylvanians would be among those wiretapped. The district court should have followed the approach taken by the

courts quoted above and recognized that Hasson's allegations showed that FullStory expressly aimed its session replay conduct at Pennsylvania.

Furthermore, the *Keeton* decision, issued the same day as *Calder*, dispels any notion that the "effects" test was intended as a generally more exacting standard, or that *Calder* must be applied to every intentional tort case. In *Keeton*, the plaintiff could not show that the defendant specifically intended to injure her in New Hampshire because she did not reside there—she lived in New York. *Keeton*, 465 U.S. at 772. There was also no evidence that the defendant specifically prioritized contacts with New Hampshire as opposed to any other state, but the Supreme Court found the defendant's ongoing exploitation of the New Hampshire market (by regularly shipping its magazine there) a sufficient contact to warrant personal jurisdiction because the plaintiff's claim arose directly out of the circulation of the magazine in New Hampshire. *Id.* at 772–75.

Because the underlying claims in *Calder* and *Keeton* were essentially the same (defamation/libel), *Keeton* proves that the *Calder* effects test was not intended to displace the traditional purposeful availment test or heighten the requirements for specific jurisdiction just because a claim sounds in intentional tort. The district court's failure to apply *Calder* correctly, and its failure to apply the traditional purposeful availment test at all, were errors of law that require reversal.

**III.** **The district court failed to identify any specific grounds for its finding that hearing the case in Pennsylvania would place an "undue burden" on FullStory.**

"The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy. Once the plaintiff has made out a prima facie case of minimum contacts, as here, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) (cleaned up). FullStory made no such showing here.

The district court identified, at most, two points in support of its "undue burden" conclusion. First, that FullStory is headquartered in Georgia, and second, that FullStory had a contract with Mattress Firm, "a Texas company." Appx9. For those reasons alone, the district court held that "[t]he interests of justice would not be served if FullStory were required to defend itself against this lawsuit in Pennsylvania." *Id.*

As with the initial minimum contacts analysis, the district court failed to apply the correct standard, disregarded critical facts, and rested its conclusion on illegitimate considerations. This Court has identified several factors relevant to the "absence of fairness or lack of substantial justice" analysis: 1) the burden on the defendant; 2) the interests of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Grand Entertainment Group*, 988 F.2d at 483.

The district court did not evaluate most of these factors, and gave inordinate weight to the "burden" on FullStory, but without identifying any specific facts that show an unusual burden here. The location of FullStory's headquarters in Georgia (the American state) is of small significance in the "undue burden" analysis. "A corporate defendant's domicile abroad, standing alone, does not render domestic exercise of jurisdiction unduly burdensome." *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012).

Disputes over a state's exercise of personal jurisdiction *only* ever arise when a defendant's headquarters and state of incorporation are not in the forum, because the defendant would be subject to general jurisdiction in the where it is incorporated and has a principal place of business. If courts always found that the defendant's out-of-forum citizenship was a dispositive factor in the undue burden analysis, like the district court did here, then there would no longer be any such thing as specific jurisdiction. Personal jurisdiction would be limited entirely to exercises of general jurisdiction over defendants domiciled in the forum.

The fact that FullStory had a contract with Mattress Firm, a Texas company, is also completely insignificant. Doing business with a Texas company does not in

any way make it more "burdensome" to answer claims in Pennsylvania for conduct arising out of interceptions in Pennsylvania that FullStory knew it was causing and receiving. Furthermore, Hasson alleged FullStory also has similar relationships with Pennsylvania-based companies, but the district court deemed those "irrelevant." Appx8. It cannot be simultaneously true that having one contract with a Texas company makes litigation in Pennsylvania more burdensome, but having contracts with multiple Pennsylvania companies is not relevant to the burden analysis.

In conducting its "undue burden" analysis, the district court entirely failed to consider one of the most important parts of the test: Pennsylvania's interest in the litigation. Hasson is a Pennsylvania citizen who was wiretapped by FullStory without his knowledge or consent while Hasson sat in Pennsylvania. Pennsylvania has an indisputably strong interest in protecting the privacy of its citizens' communications while they are present in Pennsylvania, as the passage of the WESCA statute makes clear. Why should Hasson be required to travel to Georgia or Texas to litigate his Pennsylvania statutory and common law claims about wiretapping of Pennsylvanians while they were in Pennsylvania? The connection between those states and these claims is far more tenuous than the connection between Pennsylvania and these claims. As the Supreme Court found in *Ford Motor*, a plaintiff's residence in the forum state, combined with the occurrence of

an injury related to a defendant's extensive activities in that state, all make that state the most "natural" forum for the litigation. *Ford Motor*, 141 S.Ct. at 1031.

The district court failed to apply the correct test for determining whether requiring FullStory to litigate these claims in Pennsylvania would violate traditional notions of fair play and substantial justice. Its decision that FullStory would face an "undue burden" by litigating in Pennsylvania should be reversed.

## IV.    Even if Hasson's allegations were not enough to establish *prima facie* personal jurisdiction, the district court erred in denying Hasson's motion for leave to take jurisdictional discovery.

For the reasons explained above, Hasson alleged FullStory's claim-related contacts with Pennsylvania in sufficient detail to clearly show that his claims arise out of and relate to FullStory's purposeful contacts with Pennsylvania, which were intimate, extensive, and the result of FullStory's specific business model, rather than fortuitous or attenuated.

For that reason, this Court should reverse, but even if Hasson's allegations somehow fell short of demonstrating that FullStory established sufficient contacts with Pennsylvania, the proper course is to vacate the dismissal and remand with instructions to the district court to authorize jurisdictional discovery.

Hasson sought discovery in the form of narrowly tailored interrogatories, document requests, and depositions to determine the following:

> (1) the nature and number of Pennsylvania companies with which FullStory contracts to provide the FullStory Script;

(2) the location where such contracts were executed;
(3) FullStory's knowledge of significant use of the FullStory Script on websites that operate in Pennsylvania;
(4) FullStory's receipt and knowledge of intercepted communications emanating from Pennsylvania;
(5) whether FullStory sought out a market in Pennsylvania to provide its FullStory Script; and
(6) whether FullStory advertised its FullStory Script to companies running websites in Pennsylvania.

Pl.'s Br. in Supp. of Mot. for Leave to Conduct Discovery, ECF 33 at 4.

The district court denied the motion on the basis that the information Hasson sought was either already alleged in the complaint and taken as true by the court, or "irrelevant" because it did not "relate to" Hasson's claims against FullStory. Appx10–11. Specifically, the district court held that the existence of any contracts between FullStory and Pennsylvania-based website clients was "irrelevant." Appx11.

*Ford Motor* shows that the district court's understanding of specific jurisdiction was far too narrow. The district court's conclusion that discovery regarding the number of websites using FullStory with Pennsylvania visitors is "irrelevant" would be like the Supreme Court deciding in *Ford Motor* that the numbers of Crown Victorias or Explorers sold into Montana or Minnesota were "irrelevant" because the accident vehicles were not initially sold in those states. But the Supreme Court held the opposite: those contacts with Montana and Minnesota by Ford were *extremely relevant* to the question of whether the

49

plaintiff's claims arose out of or related to Ford's contacts with those forums. *See Ford Motor*, 141 S.Ct. at 1028–31.

Hasson's allegations more than met his burden to show the "possible existence" of contacts between FullStory and Pennsylvania that gave rise to or relate to Hasson's wiretapping claims. Under this Court's standard, the district court erred in denying Hasson's motion for leave to take jurisdictional discovery. *See Toys "R" Us*, 318 F.3d at 456 (holding that district courts should assist plaintiffs by permitting discovery to establish facts in support of personal jurisdiction unless the claims are "clearly frivolous."). Accordingly, even if this Court is not prepared to fully reverse and hold that FullStory is subject to personal jurisdiction for these claims in Pennsylvania, it should at a minimum vacate the orders below and remand with instructions to the district court to permit jurisdictional discovery.

## CONCLUSION

For the reasons set forth above, Plaintiff-Appellant Kenneth Hasson requests that this Court reverse the district court's order of July 25, 2023, which granted Defendant-Appellee FullStory's motion to dismiss for lack of personal jurisdiction.

Dated: November 20, 2023      Respectfully submitted,

                                          */s/ Jamisen A. Etzel*
                                          Gary F. Lynch
                                          Kelly K. Iverson
                                          Jamisen A. Etzel

Elizabeth Pollock-Avery
Nicholas A. Colella
Patrick D. Donathen
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.ocm
elizabeth@lcllp.com
nickc@lcllp.com
patrick@lcllp.com

*Attorneys for Plaintiff/Appellant*

## CERTIFICATIONS

I, Jamisen A. Etzel, hereby certify as follows:

1.      Pursuant to Rule 46.1 of the Local Appellate Rules for the United States Court of Appeals for the Third Circuit, I, certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c), I certify that this Brief of Appellant complies with the type and volume limitations of Fed. R. App. P. 32(a)(7)(B):

    a.  According to the word count in the word processing system employed in drafting this brief (Microsoft Word), the Brief of Appellant contains 10,933 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

    b.  This Brief has been written in Times New Roman, a proportionally-spaced, 14-point serif font.

3.      On today's date, November, 20, 2023, I filed this brief with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will cause service on counsel for all parties of record, who are registered CM/ECF Users.

4.    I further certify that the E-Brief was scanned for computer viruses using the current version of VirusTotal scanning service, and no virus was detected.

5.    I certify that the electronically filed version of the brief and the paper copies sent to the Court are identical.

*/s/ Jamisen A. Etzel*
Jamisen A. Etzel
*Counsel for Appellant*

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

KENNETH HASSON,
individually and on behalf of all others similarly situated,
*Plaintiff / Appellant*

v.

FULLSTORY, INC.,
*Defendant / Appellee.*

---

*On Appeal from an Order Entered in the United States District Court for the
Western District of Pennsylvania in Case No. 2:22-cv-00450
The Honorable Marilyn J. Horan, U.S. District Judge*

———————————————————————

**JOINT APPENDIX, VOLUME I, pp. 1-15**

———————————————————————

**LYNCH CARPENTER, LLP**
Gary F. Lynch
Jamisen A. Etzel
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
gary@lcllp.com
jamisen@lcllp.com

# TABLE OF CONTENTS

**APPENDIX VOLUME I**

Document                                                                                    Page No.

[Corrected] Opinion and Order re: Judicial Notice,
dated July 25, 2023 (ECF 45) ............................................................................Appx1

Memorandum Opinion, dated July 25, 2023 (ECF 46) ....................................Appx5

Order of Court, dated July 25, 2023 (ECF 47) ..............................................Appx13

Notice of Appeal, dated August 22, 2023 (ECF 48)......................................Appx14

**APPENDIX VOLUME II**

                                                                                                    Page No.

Document

Docket sheet.....................................................................................................Appx16

First Amended Class Action Complaint and Demand
for Jury Trial, dated December 23, 2022 (ECF 23)........................................Appx23

Defendant's Motion to Dismiss dated January 23, 2023 (ECF 27)...............Appx55

Motion for Judicial Notice, filed January 23, 2023 (ECF 29).......................Appx58

Exhibit 1 to Motion for Judicial Notice (ECF 29-1)....................................Appx65

Exhibit 2 to Motion for Judicial Notice (ECF 29-2).....................................Appx72

Exhibit 3 to Motion for Judicial Notice (ECF 29-3).....................................Appx83

Exhibit 4 to Motion for Judicial Notice (ECF 29-4).....................................Appx97

Exhibit 5 to Motion for Judicial Notice (ECF 29-5)...................................Appx113

Plaintiff's Motion to Conduct Discovery
dated February 13, 2023 (ECF 32) ..............................................................Appx115

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH HASSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 2:22-cv-1246 |
| v. | ) ) | Judge Marilyn J. Horan |
| FULLSTORY, INC., | ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Presently before the Court is Defendant FullStory, Inc.'s Motion for Judicial Notice. (ECF No. 29).  FullStory filed its Motion for Judicial Notice on January 23, 2023, the same day it filed its Motion to Dismiss Plaintiff Kenneth Hasson's Amended Complaint for Lack of Jurisdiction and Failure to State a Claim.  (ECF Nos. 27 & 29).  Mr. Hasson filed a Response in Opposition, (ECF No. 30), and FullStory filed a Reply brief.  (ECF No. 31).  FullStory's Motion for Judicial Notice is now ripe for decision.  For the following reasons, FullStory's Motion for Judicial Notice is granted as to Exhibit 5, but denied as moot as to Exhibits 1-4.

### I.     Relevant Legal Standards

Generally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 91 (3d Cir. 2012).  If other matters are considered, then the motion must be treated as one for summary judgment, providing for additional protections for plaintiff.  Fed. R. Civ. P. 12(b)(d).  In deciding motions to dismiss, courts may consider "matters incorporated by reference or integral to the claim [and] items subject to judicial notice."  *Buck v. Hampton Twp. Sch. Dist.¸* 452 F.3d 256, 260 (3d Cir. 2006).

1

Additionally, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The judicial notice rule allows the court to "take judicial notice of public records." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000). Federal Rule of Evidence 201(b) states: "The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Federal Rule of Evidence 201(c)(2) further explains that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Upon judicial notice, the document "may only be considered for the limited purpose of showing that a particular statement was made by a particular person" and not "for the truth of the matters purportedly contained within those documents." *Oran*, 226 F.2d at 289 (citations omitted). For a document to be subject to judicial notice, it must not be "reasonably subject to dispute." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007). "Concerns regarding the authenticity or completeness of a document are the types of concerns that render a document reasonably subject to dispute." *Ryanair DAC v. Booking Holdings, Inc.*, 2022 WL 13946243, at *3 (D. Del. Oct. 24, 2022).

## II.    Discussion

### A.  Texas Secretary of State Public Record

FullStory argues that the Court should take judicial notice of a public record from the Texas Secretary of State's website, stating that Mattress Firm is incorporated in Texas and has its principal place of business in Texas. (ECF No. 29, at 4). Mr. Hasson argues that the Court

2

should decline to take judicial notice of the Texas Secretary of State's website, as Mattress Firm's state of incorporation and principal place of business are irrelevant to the Court's personal jurisdiction analysis of FullStory's Motion to Dismiss.  (ECF No. 30, at 5-6).

Mattress Firm's state of incorporation and principal place of business are directly relevant to the Court's inquiry into whether it has personal jurisdiction over FullStory in this case. FullStory provides software services to Mattress Firm.  (ECF No. 23, ¶ 69).  FullStory is a Georgia company.  (ECF No. 23, ¶ 6).  And, as per Exhibit 5 of FullStory's Motion for Judicial Notice, Mattress Firm is a Texas corporation.  (ECF No. 29-5, at 2).

FullStory's software code is embedded on the Mattress Firm website to learn about how visitors use Mattress Firm's website.  (ECF No. 23, ¶¶ 42, 69).  Mattress Firm uses FullStory's session replay feature that provides a reproduction of a user's online experience to understand how visitors interact with Mattress Firm's website.  (ECF No. 23, ¶ 41).

Mr. Hasson is a Pennsylvania resident who visited Mattress Firm's website from his home computer in Pennsylvania.  (ECF No. 23, ¶ 67).  Mr. Hasson alleges that FullStory script intercepted his movements on Mattress Firm's website, including clicks, URLs of web pages visited, keystrokes, and personal data, i.e. his name, address, email address, and payment information, that he allegedly entered at the Mattress Firm website.  (ECF No. 23, ¶¶ 1, 71, 76, 79).

Under the facts of this case, Mattress Firm's state of incorporation and principal place of business are directly relevant to the Court's personal jurisdiction inquiry.  Thus, FullStory's motion for judicial notice as to the Texas Secretary of State's website, concerning Mattress Firm's state of incorporation and principal place of business, is granted.

Appx3

### B.  Mattress Firm's Pop-Up Consent Banners & Privacy Policies

FullStory argues that the Court should consider Mattress Firm's pop-up consent banners and privacy policies, (Exhibits 1-4), in deciding its Motion to Dismiss, as these documents are explicitly referenced in the Amended Complaint.  (ECF No. 29, at 2).  Mr. Hasson argues that the Court should decline to consider Exhibits 1-4 in deciding FullStory's Motion to Dismiss as the documents cannot be properly authenticated as being representative of what Mr. Hasson saw when he was browsing the Mattress Firm website.  (ECF No. 30, at 3).  As this matter is being resolved on a jurisdictional basis, ruling on FullStory's Motion for Judicial Notice as to Mattress Firm's pop-up consent banners and privacy policies is not necessary.

### C.  FullStory's Webpage

Although FullStory initially requested the Court to take judicial notice of the Mattress Firm webpage in its Motion for Judicial Notice, it has withdrawn its request.  (ECF No. 31, at 3 n.1).  As such, the Court will take no action upon FullStory's withdrawn Motion for Judicial Notice of FullStory's webpage.

### III.  Conclusion

FullStory's Motion for Judicial Notice is granted as to Exhibit 5 but denied as moot as to Mattress Firm's pop-up consent banners and privacy policies.

DATE: July 25, 2023 _____

Marilyn J. Horan
United States District Judge

4

Appx4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KENNETH HASSON, individually and on )
behalf of all others similarly situated, )
　　　　　　　　　　　　　　　　　) 　　　2:22-cv-1246
　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　)
　　　　　　　　v. ) 　　　Judge Marilyn J. Horan
　　　　　　　　　　　　　　　　　)
FULLSTORY, INC., )
　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant. )

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Kenneth Hasson brings a two count Amended Complaint against Defendant

FullStory, Inc., alleging violations of the Pennsylvania Wiretap Act and a Pennsylvania state law

intrusion upon seclusion claim.  (ECF No. 23).  Presently before the Court is FullStory's Motion

to Dismiss Mr. Hasson's Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(2) and 12(b)(6).  (ECF No. 27).  Mr. Hasson filed his Response, (ECF No. 34), and

FullStory filed its Reply.  (ECF No. 39).  For the reasons stated herein, FullStory's Motion to

Dismiss pursuant to Rule 12(b)(2) will be granted, and FullStory's Motion to Dismiss pursuant

to Rule 12(b)(6) will be denied as moot.

Also before the Court is Mr. Hasson's Motion for Leave to Conduct Discovery Limited

to the Issue of Personal Jurisdiction and accompanying brief.  (ECF Nos. 32-33).  FullStory filed

a Response, (ECF No. 38), and Mr. Hasson filed a Reply.  (ECF No. 39).  The matter is now ripe

for decision.  For the following reasons, Mr. Hasson's Motion for Leave to Conduct Discovery to

the Issue of Personal Jurisdiction will be denied.

## I.　　Statement of Facts

FullStory provides software services to Mattress Firm.  (ECF No. 23, ℙ 69).  FullStory is

a Georgia company, (ECF No. 23, ℙ 6), and Mattress Firm is a Texas company.  (ECF Nos. 29-5,

at 2; 45, at 3).[1]  Mr. Hasson is a Pennsylvania resident who visited Mattress Firm's website from his home computer in Pennsylvania.  (ECF No. 23, ¶ 67).  FullStory's software code, to learn about how visitors use the Mattress Firm website, is embedded on Mattress Firm's website. (ECF No. 23, ¶¶ 42, 69).  FullStory's session replay feature, which provides a reproduction of a user's online experience, is used by Mattress Firm to understand how visitors interact with its website.  (ECF No. 23, ¶ 41).

Mr. Hasson alleges that FullStory script intercepted his movements on Mattress Firm's website, including clicks, URLs of web pages visited, keystrokes, and personal data, i.e. his name, address, email address, and payment information, that he allegedly entered at the Mattress Firm website.  (ECF No. 23, ¶¶ 1, 71, 76, 79).

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction.  *Danziger v. De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020).  Where the Court is sitting in diversity, the Court applies the law of the forum state, which, in this case, is Pennsylvania.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Pennsylvania's long-arm statute extends to the limit of federal due process.  42 Pa. C.S.A § 5322(b).  Accordingly, in order to demonstrate personal jurisdiction, the plaintiff must show that: (1) the defendant has constitutionally sufficient "minimum contacts" with the forum, and (2) the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259-60 (3d Cir. 1998).

---

[1] As discussed in this Court's July 25, 2023 Opinion and Order, (ECF No. 45), the Court takes judicial notice of Mattress Firm's state of incorporation and principal place of business for the purposes of the present Motions to Dismiss.

As both parties agree that general jurisdiction does not apply in this case, the only basis to confer jurisdiction over FullStory is specific jurisdiction.  (ECF Nos. 28, at 11; 34 at 9).  In the context of specific jurisdiction, the "minimum contacts" determination is analyzed differently depending on the type of claim asserted.  *See Maser v. Deeble*, 2017 WL 930795, at *4 (W.D. Pa. Mar. 9, 2017).  The three-part "effects" test, as set forth in *Calder v. Jones*, 465 U.S. 783 (1984), applies to intentional tort claims.  *Kyko Glob., Inc. v. Bhongir*, 807 F. App'x 148, 152 (3d Cir. 2020).  Because Mr. Hasson's wiretapping and intrusion upon seclusion claims constitute intentional torts, the *Calder* test applies in this case.  *Maser*, 2017 WL 930795, at *4.

In the Third Circuit, a plaintiff must plead that (1) the defendant committed an intentional tort, (2) the plaintiff felt the brunt of the harm in Pennsylvania, and (3) the defendant "expressly aimed" its allegedly tortious conduct at Pennsylvania.  *IMO Indus.*, 155 F.3d at 265-66 (synthesizing *Calder*'s effects test).

To satisfy the third element of the *Calder* test, the plaintiff must (1) "point to specific activity indicating" that the defendant "expressly aimed" its conduct at Pennsylvania and (2) show that the defendant "knew" that plaintiff would suffer the brunt of the harm in Pennsylvania. *Id.* at 266.  Where the plaintiff fails to satisfy the "expressly aiming" element under the *Calder* test, a district court does not need to consider the other two elements of the test.  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).  In analyzing the "expressly aimed" element, "the plaintiff cannot be the only link between the defendant and the forum."  *Walden v. Fiore*, 571 U.S. 277, 285-86, 290-91 (2014).  Other similar cases have held that a website is not expressly aimed at a forum state based only upon the plaintiff's accessing the website within his or her home state.  *See, e.g.*, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142-43 (4th Cir. 2020) (involving a website that lists the forum state as an option on a drop-down menu); *Sacco v.*

3

*Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (involving session replay software).  Likewise, other cases have held that "the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*."  *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 477 (3d Cir. 2011).  Indeed, a website that is accessible worldwide does not expressly aim a defendant's conduct at the forum state.  *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001).  Furthermore, in order to satisfy specific jurisdiction, "the contacts must give rise to—or relate to—plaintiff's claims."  *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021).

Here, Mr. Hasson is not able to show that FullStory expressly aimed its allegedly tortious conduct at Pennsylvania.  Mr. Hasson's allegations relate to his use of the Mattress Firm website.  FullStory is a software service provider for Mattress Firm, which is a Texas company.  FullStory contracted with Mattress Firm to provide its software to Mattress Firm for use on Mattress Firm's website.  FullStory did not expressly aim its software at Pennsylvania.  FullStory contracted with a Texas company to embed software on its website, and the information that was captured from Mattress Firm's website was received by Mattress Firm.  Mere operation of a website does not cause a website provider (or a third-party vendor) to expressly aim its conduct at the forum state.  Mr. Hasson has pled insufficient facts to demonstrate that FullStory expressly aimed its conduct at Pennsylvania through the Mattress Firm website.  Although Mr. Hasson argues that FullStory has other Pennsylvania clients who may be using FullStory's software, such is not enough to demonstrate that FullStory has expressly aimed its conduct at Pennsylvania for the purposes of the present case.  Such other Pennsylvania alleged website contacts are irrelevant to establish specific jurisdiction in this case as those contacts do not relate to Mr. Hasson's claims against FullStory.  The website upon which Mr. Hasson bases his claims is

Mattress Firm's, and other websites in Pennsylvania are not relevant to his claim. FullStory does not have the requisite minimum contacts with Pennsylvania to satisfy the *Calder* test for personal jurisdiction in this case.

Consistent with our determination of no personal jurisdiction over FullStory in the present case, the District Court for the Central District of California found, in the case of *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021), that it did not have personal jurisdiction over Defendant FullStory in a similar wiretapping case involving the Nike website, which had FullStory session replay software installed on the website. *Id.* at 515. The *Saleh* court applied California jurisdictional standards to find that neither FullStory nor Nike expressly aimed its software services at California. *Id.* Even more recently, the Southern District of California dismissed a similar case involving FullStory's session replay software for lack of personal jurisdiction. *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *9 (S.D. Cal. July 17, 2023). This Court concurs with the reasoning from the *Saleh* and *Mikulsky* cases and finds that FullStory did not expressly aim its software services at Pennsylvania. Therefore, Mr. Hasson's arguments for personal jurisdiction fail.

Furthermore, as to personal jurisdiction, notwithstanding Mr. Hasson's failure to satisfy the *Calder* test for sufficient minimum contacts, this Court further finds that were this lawsuit to proceed in the Western District of Pennsylvania, such would place an undue burden upon FullStory. FullStory is headquartered in Georgia, and it contracted with Mattress Firm, a Texas company, for the application of FullStory's session replay software on Mattress Firm's website. The interests of justice would not be served if FullStory were required to defend itself against this lawsuit in Pennsylvania. Thus, Mr. Hasson fails to satisfy both personal jurisdiction criteria

Appx9

for this Court to exercise personal jurisdiction over FullStory in this case.  FullStory's Motion to Dismiss for lack of personal jurisdiction will be granted.

### III.     Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction

"A court has discretion to allow discovery when considering a motion to dismiss for lack of personal jurisdiction." *In re Diisocyanates Antitrust Litig.*, 2020 WL 1140245, at *7 (W.D. Pa. Mar. 9, 2020).  "Parties are entitled to a fair opportunity to engage in jurisdictional discovery to obtain facts necessary for thorough consideration of the [jurisdiction] issue." *Id.* (internal quotations omitted).  "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotations omitted). "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, . . . courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Id.* (internal citations and quotations omitted).  However, jurisdictional discovery is only appropriate when a plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state.'" *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022).

Mr. Hasson argues that if he is permitted to conduct limited personal jurisdictional discovery, he will be able to bring forth facts showing that FullStory has clients in Pennsylvania. (ECF No. 33, at 4).  Mr. Hasson's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction seeks to attain information that is already alleged within the Amended Complaint, which the Court has accepted as true.  As discussed above, such additional alleged

6

websites involving Pennsylvania contacts are irrelevant for the purposes of finding specific jurisdiction in this case as specific jurisdiction requires that the alleged contacts relate to Mr. Hasson's claims against FullStory.  The website upon which Mr. Hasson bases his claims is Mattress Firm's; other potential websites of other Pennsylvania clients are not relevant to Mr. Hasson's claims against FullStory in this case.  Mr. Hasson has not proposed that any relevant jurisdictional facts can be developed to change the ultimate conclusion that personal jurisdiction over FullStory fails in this case.  As such, Mr. Hasson's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction will be denied.

### IV.    Leave to Amend

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted).  Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Courts have found that amendment would be futile where the court lacks personal jurisdiction over the defendant.  *See Kennedy v. Help at Home,* LLC, 731 F. App'x 105, 108 (3d Cir. 2018).

In this case, leave to amend will be denied.  The Court does not have personal jurisdiction in this case and will not grant Mr. Hasson's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction, as such would only search for irrelevant facts.  As discussed above, this Court has no personal jurisdiction over FullStory in Pennsylvania for the purposes of the present case.  Absent personal jurisdiction, there is no basis upon which Mr. Hasson can state a claim over FullStory in Pennsylvania.  Thus, amendment would be futile, and the case will be dismissed.

**V.     Conclusion**

FullStory's 12(b)(2) Motion to Dismiss will be granted, and Mr. Hasson will not be permitted leave to amend his claims.  FullStory's 12(b)(6) Motion to Dismiss will be denied as moot.  Furthermore, Mr. Hasson's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction will be denied.  The case will be dismissed.  A separate Order to follow.

DATE:  July 25, 2023 _____

Marilyn J. Horan
United States District Judge

Appx12

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KENNETH HASSON, individually and on
behalf of all others similarly situated,

        Plaintiff,

        v.

FULLSTORY, INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

2:22-cv-1246

Judge Marilyn J. Horan

## ORDER

AND NOW, on this 25th day of July 2023, upon consideration of Defendant's Motion to Dismiss Plaintiff's Amended Complaint and accompanying brief, (ECF Nos. 27 & 28), Plaintiff's Response, (ECF No. 34), and Defendant's Reply, (ECF No. 37), it is hereby ordered that Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied as moot.  Plaintiff is not granted leave to amend.

IT IS FURTHER ORDERED THAT, upon consideration of Plaintiff's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction and accompanying brief, (ECF Nos. 32 & 33), Defendant's Response, (ECF No. 38), and Plaintiff's Reply, (ECF No. 39), it is hereby ordered that Plaintiff's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction is denied.

The case is dismissed.

Marilyn J. Horan
United States District Judge

1

Appx13

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH HASSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>FULLSTORY, INC.,<br><br>    Defendant. | Case No. 2:22-cv-01246-MJH |

## <u>NOTICE OF APPEAL</u>

Plaintiff Kenneth Hasson hereby appeals to the United States Court of Appeals for the Third Circuit from the Court's Opinion and Order regarding Defendant's Motion for Judicial Notice (ECF Nos. 44–45), Memorandum Opinion regarding Defendant's Motion to Dismiss and Plaintiff's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction (ECF No. 46), and Order granting in part and denying in part Defendant's Motion to Dismiss and denying Plaintiff's Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction (ECF No. 47), all dated July 25, 2023, which were entered by Hon. Marilyn J. Horan in the United States District Court for the Western District of Pennsylvania.

Date: August 22, 2023

Respectfully submitted,

*/s/ Jamisen A. Etzel*
Gary F. Lynch
Kelly K. Iverson
Jamisen A. Etzel
Elizabeth Pollock-Avery
Nicholas A. Colella
Patrick D. Donathen
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor

Appx14

Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com
elizabeth@lcllp.com
nickc@lcllp.com
patrick@lcllp.com

*Attorneys for Plaintiff*

Appx15

**CERTIFICATE OF SERVICE**

On today's date, November 20, 2023, I filed the foregoing document with the

Clerk of the United States Court of Appeals for the Third Circuit via the Court's

CM/ECF system, which will cause service on counsel for all parties of record, who

are registered CM/ECF Users.


*/s/ Jamisen A. Etzel*
Jamisen A. Etzel