No. 23-2535

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

*Kenneth Hasson*,

Plaintiff-Appellant,

v.

*FullStory, Inc.*,

Defendant-Appellee.

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 2:22-cv-00450
The Honorable Marilyn J. Horan

## BRIEF OF DEFENDANT-APPELLEE
## FULLSTORY, INC.

Emily Johnson Henn
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700

Mark W. Mosier
Eric C. Bosset
Kendall T. Burchard
Grace Pyo
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000

*Counsel for FullStory, Inc.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, and Third Circuit Local Appellate Rule 26.1.1(b), Appellee FullStory, Inc. discloses the following.

FullStory, Inc. has no parent corporation.

Google Ventures owns 10% or more of FullStory, Inc.'s stock.

There are no publicly held corporations that have a financial interest in the outcome of this proceeding.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CITATIONS ......................................................................... v

INTRODUCTION ............................................................................... 1

ISSUES PRESENTED........................................................................... 3

STATEMENT OF THE CASE.................................................................... 3

    A.    Hasson Alleges That Mattress Firm Embedded FullStory's Session Replay Code on Its National Website, but He Does Not Allege that This Act Took Place in Pennsylvania............................... 3

    B.    Hasson Alleges That FullStory's Script Captured His Browsing on Mattress Firm's Website. ................................................. 4

    C.    The District Court Dismissed Hasson's Suit for Lack of Personal Jurisdiction and Denied Hasson's Request for Jurisdictional Discovery. ....................................................... 6

SUMMARY OF ARGUMENT .................................................................... 9

STANDARD OF REVIEW ...................................................................... 13

ARGUMENT .................................................................................. 13

I.    The District Court Correctly Dismissed Hasson's Amended Complaint for Lack of Personal Jurisdiction................................ 13

    A.    The *Calder* "Effects" Test Applies Here. ........................................ 15

        1.    Hasson Forfeited Any Argument Against Applying *Calder*..................................................................... 15

        2.    Even if Hasson's Argument Was Preserved, *Calder* Would Apply Because Hasson Asserts Intentional Tort Claims. .................................................................. 16

    B.    Hasson Did Not Satisfy the *Calder* Test. ........................................ 19

|  | 1. | The District Court Correctly Held That FullStory Did Not Expressly Aim Its Conduct at Pennsylvania. | 20 |
|  | 2. | Hasson Failed to Allege That FullStory "Knew" Its Software Would Allegedly Cause Harm in Pennsylvania. | 28 |
| C. | | Hasson Cannot Establish Personal Jurisdiction by Invoking the Traditional Test. | 30 |
|  | 1. | Hasson Cannot Use the Traditional Test as an End-Run Around *Calder*. | 30 |
|  | 2. | FullStory's Alleged Contacts with Other Websites Operating in Pennsylvania Are Irrelevant to the Jurisdictional Analysis. | 32 |
|  | 3. | Mattress Firm's Use of FullStory Script on Its Nationally Accessible Website Does Not Satisfy the Traditional Test. | 36 |
| D. | | The Exercise of Jurisdiction Would be Unreasonable. | 39 |
| II. | | The District Court Did Not Abuse Its Discretion in Rejecting Hasson's Request for Jurisdictional Discovery. | 40 |
| III. | | Alternatively, the Court Should Affirm Because Hasson Fails to State a Claim. | 43 |
| A. | | Hasson Fails to State a Claim Under the Pennsylvania Wiretap Act. | 43 |
|  | 1. | Hasson Does Not Plausibly Allege that FullStory Used a "Device." | 44 |
|  | 2. | Hasson Does Not Plausibly Allege the Interception of the "Contents" of a Communication. | 47 |
|  | 3. | Hasson's Allegations Demonstrate That He Consented to the Alleged Data Collection. | 49 |
| B. | | Hasson Fails to State a Claim for Intrusion Upon Seclusion. | 52 |
| | | CONCLUSION | 55 |

CERTIFICATE OF BAR MEMBERSHIP.............................................................. 57

CERTIFICATE OF SERVICE .............................................................................. 58

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Admar Int'l v. Eastrock, LLC,*
  18 F.4th 783 (5th Cir. 2021) ..................................................................37

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,*
  751 F.3d 796 (7th Cir. 2014) ............................................................2, 23

*Aldossari ex rel. Aldossari v. Ripp,*
  49 F.4th 236 (3d Cir. 2022) ..................................................................40

*Alves v. Goodyear Tire & Rubber Co.,*
  __ F. Supp. 3d __, 2023 WL 4706585 (D. Mass. July 24, 2023)......................38

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................13

*be2 LLC v. Ivanov,*
  642 F.3d 555 (7th Cir. 2011) ...............................................................37

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................................13

*Boring v. Google, Inc.,*
  598 F. Supp. 2d 695 (W.D. Pa. 2009)......................................................53

*Briskin v. Shopify, Inc.,*
  87 F.4th 404 (9th Cir. 2023) .........................................................2, 23, 35

*Bristol-Myers Squibb Co. v. Super. Ct.,*
  582 U.S. 255 (2017)................................................................14, 17, 32

*Buck v. Hampton Twp. Sch. Dist.,*
  452 F.3d 256 (3d Cir. 2006) ...................................................................5

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985)...........................................................................36

*Calder v. Jones,*
  465 U.S. 783 (1984)....................................................................*passim*

v

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................48

*Carteret Sav. Bank, FA v. Shushan*,
   954 F.2d 141 (3d Cir. 1992) ...............................................................40

*Commonwealth v. Byrd*,
   235 A.3d 311 (Pa. 2020).............................................................49, 50

*Commonwealth v. De Marco*,
   578 A.2d 942 (Pa. Super. Ct. 1990).....................................................50

*Commonwealth v. Diego*,
   119 A.3d 370 (Pa. Super. Ct. 2015)...............................................46, 50

*Commonwealth v. Fant*,
   146 A.3d 1254 (Pa. 2016) ...................................................................44

*Commonwealth v. Gamby*,
   283 A.3d 298 (Pa. 2022)......................................................................44

*Commonwealth v. McCoy*,
   275 A.2d 28 (Pa. 1971)........................................................................45

*Commonwealth v. Proetto*,
   771 A.2d 823 (Pa. Super. Ct. 2001)...............................................50, 51

*Connor v. Whirlpool Corp.*,
   2021 WL 3076477 (S.D. Fla. July 6, 2021) .........................................46

*Cook v. GameStop, Inc.*,
   2023 WL 5529772 (W.D. Pa. Aug. 28, 2023)..................................47, 54

*Curd v. Papa John's Int'l, Inc.*,
   2023 WL 6121152 (D. Md. Sept. 19, 2023).........................................23

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
   948 F.3d 124 (3d Cir. 2020) ..........................................................13, 14

*Doe v. FullStory, Inc.*,
   No. 23-cv-00059-WHO (N.D. Cal. Jan. 17, 2024)...............................22

*Euorfins Pharma US Holdings v. BioAlliance Pharma SA*,
   623 F.3d 147 (3d Cir. 2010) ...............................................................40

*Farst v. AutoZone, Inc.*,
   2023 WL 7179807 (M.D. Pa. Nov. 1, 2023) ......................................53

*Fidrych v. Marriott Int'l, Inc.*,
   952 F.3d 124 (4th Cir. 2020) .......................................................25, 35

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
   141 S. Ct. 1017 (2021)..................................................33, 34, 35, 42

*Fraser v. Nationwide Mut. Ins. Co.*,
   352 F.3d 107 (3d Cir. 2003) ...............................................................45

*Goldstein v. Costco Wholesale Corp.*,
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) .......................................45, 53

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).............................................................................32

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ...............................................................47

*Gray v. Amazon.com, Inc.*,
   653 F. Supp. 3d 847 (W.D. Wash. 2023) ...........................................52

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000).........................................................37

*Harris v. City of Phila.*,
   35 F.3d 840 (3d Cir. 1994) ...........................................................15, 29

*Hassen v. Gov't of V.I.*,
   861 F.3d 108 (3d Cir. 2017) ...............................................................13

*Hepp v Facebook*,
   14 F.4th 204 (3d Cir. 2021) .........................................................34, 35

*Hood v. American Auto Care, LLC*,
   21 F.4th 1216 (10th Cir. 2021) ..........................................................27

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
    2007 WL 4394447 (E.D. Pa. Dec. 13, 2007)......................................................46

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ...................................................................*passim*

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012).............................................................48

*Jacome v. Spirit Airlines Inc.*,
    2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)..........................................45, 46

*Johnson v. Griffin*,
    85 F.4th 429 (6th Cir. 2023) .............................................................................27

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) .............................................................................35

*Jones v. Papa John's Int'l, Inc.*,
    2023 WL 7155562 (E.D. Mo. Oct. 31, 2023).....................................................23

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)....................................................................................18, 19

*Kline v. Sec. Guards, Inc.*,
    386 F.3d 246 (3d Cir. 2004) ........................................................................51, 52

*Kyko Global, Inc. v. Bhongir*,
    2019 WL 1493400 (W.D. Pa. Apr. 4, 2019) .......................................................31

*Kyko Global, Inc. v. Bhongir*,
    807 F. App'x 148 (3d Cir. 2020) .......................................................................17

*Larsen v. Phila. Newspapers, Inc.*,
    543 A.2d 1181 (Pa. Super. Ct. 1988)..................................................................16

*In re Lipitor Antitrust Litig.*,
    868 F.3d 231 (3d Cir. 2017) ...............................................................................5

*Lutz v. Portfolio Recovery Assocs., LLC*,
    49 F.4th 323 (3d Cir. 2022) ..............................................................................13

*Marks v. Alfa Grp.*,
    369 F. App'x 368 (3d Cir. 2010) ........................................................28

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) ...........................................19, 26, 28, 30

*Martinez v. Union Officine Meccaniche S.P.A.*,
    2023 WL 3336644 (3d Cir. May 10, 2023) ........................................35

*Massie v. Gen. Motors Co.*,
    2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................................22

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ...................................................29, 38

*Mikulsky v. Noom, Inc.*,
    2023 WL 4567096 (S.D. Cal. July 17, 2023) ....................................23

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ...............................................................42

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
    2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ....................................53

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) ...........................................................41

*NBA Properties, Inc. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022) .............................................................38

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ...................................................50, 51, 54

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007) .............................................................17

*O'Donnell v. United States*,
    891 F.2d 1079 (3d Cir. 1989) ...........................................................52

*Pa. State Police v. Grove*,
    119 A.3d 1102 (Pa. Cmmw. Ct. 2015) .............................................48

*Patchen v. McGuire*,
  2012 WL 4473233 (E.D. Pa. Sept. 27, 2012) ....................................................31

*Popa v. Harriet Carter Gifts, Inc.*,
  52 F.4th 121 (3d Cir. 2022) .............................................................24, 43, 49, 54

*Potter v. Havlicek*,
  2008 WL 2556723 (S.D. Ohio June 23, 2008) ................................................46

*Pro Golf Mfg. v. Tribune Review Newspaper Co.*,
  809 A.2d 243 (Pa. 2002) ..............................................................................51, 53

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001) ....................................................................*passim*

*Rosenthal v. Bloomingdale's, Inc.*,
  2023 WL 5179506 (D. Mass. Aug. 11, 2023) ..................................................38

*Sacco v. Mouseflow, Inc.*,
  2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ...........................................22, 28

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................................................22, 48, 52

*Schnur v. Papa John's Int'l, Inc.*,
  2023 WL 5529775 (E.D. Pa. Aug. 28, 2023) ...................................................23

*Scott v. Lackey*,
  587 F. App'x 712 (3d Cir. 2014) ......................................................................26

*Shoemaker v. Zeitlin*,
  2023 WL 3826460 (M.D. Pa. June 5, 2023) .....................................................41

*Shrader v. Biddinger*,
  633 F.3d 1235 (10th Cir. 2011) ........................................................................23

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ..............................................................13, 37, 40

*UMG Recordings, Inc. v. Kurbanov*,
  963 F.3d 344 (4th Cir. 2020) ...........................................................................29

*United States v. Ackies*,
   918 F.3d 190 (1st Cir. 2019) ................................................................45

*United States v. Bowers*,
   2021 WL 2882438 (W.D. Pa. July 8, 2021) ........................................53

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...................................................................*passim*

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ................................................................36

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......................................47, 48

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...............................................47

## Statutes

18 Pa. Cons. Stat. § 5702 ........................................................*passim*

18 Pa. Cons. Stat. § 5703 ......................................................16

18 Pa. Cons. Stat. § 5704 .......................................................43, 48

18 Pa. Cons. Stat. § 5725 ......................................................43

42 Pa. Cons. Stat. § 8343 .......................................................27

Electronic Communications Privacy Act of 1986,
   18 U.S.C. § 2510 .......................................................45, 47

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ..........................................................11, 43

*Restatement (Second) of Torts* § 652B (Am. Law. Inst. 1977) ...............16

*Webster's Third New International Dictionary* 102, 618 (1976) ...........44

## INTRODUCTION

Plaintiff-Appellant Kenneth Hasson brought this suit alleging that his privacy was violated when he visited Mattress Firm's website. He alleges that Defendant-Appellee FullStory violated his privacy because Mattress Firm embedded FullStory's "session replay code" on its website. Hasson sued in Pennsylvania, but he does not allege that the conduct at the heart of this case—Mattress Firm's embedding FullStory's code on its website—happened in Pennsylvania. Hasson does not—and cannot—make that allegation because neither Mattress Firm nor FullStory is based in Pennsylvania. Mattress Firm is based in Texas and FullStory is headquartered in Georgia. Given the lack of connection between FullStory's suit-related conduct and Pennsylvania, the district court dismissed the case for lack of personal jurisdiction.

Hasson contends that "[t]he district court failed to apply the correct test for specific personal jurisdiction." Brief of Appellant ("Br.") at 2. But the district court applied the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984), which Hasson acknowledged in the district court applied to tort claims like his. And this Court has held that it "must" apply *Calder* to decide whether a court may exercise personal jurisdiction for intentional tort claims. *See Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001). Hasson's argument that the district court "applied the wrong test" (Br. 21) is thus forfeited and foreclosed by binding circuit precedent.

Contrary to Hasson's assertions, the district court correctly applied *Calder* here. Across the country, plaintiffs have challenged the use of session replay code by bringing suit in their home forums against session replay code providers and website operators who use that code. The vast majority of courts have held that they lack jurisdiction to adjudicate these claims because the providers and operators have not directed their allegedly tortious conduct at the forum.

As these courts have recognized, allowing claims like Hasson's to proceed would violate due process. In Hasson's view, his unilateral decision to visit Mattress Firm's website from Pennsylvania is sufficient to permit courts in Pennsylvania to exercise personal jurisdiction over FullStory—a vendor who provided code for Mattress Firm's website. But if providing code for use on an interactive website were enough to establish personal jurisdiction, session replay code providers and website operators would be subject to jurisdiction "in every spot on the planet where th[e] interactive website is accessible." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). That rule "would be too broad to comport with due process" and would "lead to the eventual demise of all restrictions on" personal jurisdiction. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 417, 421 (9th Cir. 2023) (cleaned up).

The district court correctly held that it could not exercise personal jurisdiction over FullStory. This Court should affirm.

# ISSUES PRESENTED

1. Whether the district court correctly dismissed Hasson's claims for lack of personal jurisdiction where Hasson asserts intentional tort claims but does not allege that FullStory expressly aimed its allegedly tortious conduct at Pennsylvania.

2. Whether the district court abused its discretion when it denied Hasson's request for jurisdictional discovery.

3. Whether, in the alternative, this Court should affirm dismissal of Hasson's suit for failure to state a claim under Pennsylvania law.[1]

# STATEMENT OF THE CASE

### A. Hasson Alleges That Mattress Firm Embedded FullStory's Session Replay Code on Its National Website, but He Does Not Allege that This Act Took Place in Pennsylvania.

Plaintiff-Appellant Kenneth Hasson brought this putative class action against Defendant-Appellee FullStory "for wiretapping the electronic communications of visitors" to "websites that use FullStory's session replay software." Appx23 ¶ 1. Hasson bases his claims on allegations that he visited Mattress Firm's website, www.mattressfirm.com, and that the Mattress Firm website used FullStory's code. Appx39-40 ¶¶ 67, 69.

---

[1] FullStory preserved this argument by raising it in its brief below. *See* Appx20 (ECF 28, Def.'s Br. in Support of Mot. to Dismiss at 9–18). Hasson opposed. *See* Appx20 (ECF 34, Pl.'s Br. in Opp'n to Mot. to Dismiss at 10–20). The district court did not consider these arguments because it lacked jurisdiction. Appx12.

FullStory "develops marketing and analytics software" that "provide[s] online marketers and website designers with insights into the user experience." Appx28, 32 ¶¶ 21, 38. "One of the key features of FullStory's software . . . is a session replay script," which operates using a "small snippet of JavaScript code" that website operators embed on their website (the "FullStory Script"). Appx33-34 ¶¶ 41–42. "Once a website installs the FullStory Script," the code "report[s] every keystroke, movement, click and/or moment of inactivity" on that website back to "the FullStory server." Appx33-34 ¶ 42 (internal quotation marks omitted). The information "allows FullStory's clients to recreate website visitors' experience." Appx35 ¶ 48.

Hasson's claims depend on his allegation that Mattress Firm embedded the FullStory Script on its website, but he does not allege that Mattress Firm embedded the code on its website in Pennsylvania. For good reason: Mattress Firm is a Texas corporation with a principal place of business in Texas, Appx2-3, *see also* Appx113-114, and FullStory is a Delaware corporation with a principal place of business in Atlanta, Georgia, Appx24 ¶ 6.

## B. Hasson Alleges That FullStory's Script Captured His Browsing on Mattress Firm's Website.

Hasson alleges that he visited Mattress Firm's website "on his computer from inside the Commonwealth of Pennsylvania." Appx39 ¶ 67. "Mattress Firm maintains a purported 'Cookie Banner'" on its home page. Appx45 ¶ 84. The pop-up Cookie Banner states:

> This website uses cookies to ensure you get the best expe-
> rience. To consent to these cookies, please continue
> shopping. You can view our Privacy Policy and manage
> your cookie Preferences.

Appx66; *see also* Appx73.[2]

Hasson alleges that he "browsed for different products on sale" and "use[d]
his mouse to hover and click on certain products." Appx40 ¶ 70. Hasson alleges
that he "add[ed] a product to his cart and enter[ed] in his personal information in the
checkout text fields" although he "did not end up purchasing any products." Appx40
¶¶ 70–71. During this visit, Hasson alleges, the FullStory Script "instantaneously
captured his Website Communications" and "obtained certain information about his
device, browser, and geolocation." Appx40 ¶ 72.

The pop-up banner expressly informs visitors that they can view Mattress
Firm's "Privacy Policy" on its website. Appx46 ¶ 85; *see also* Appx84-96; Appx98-
112. The Privacy Policy discloses that information such as a visitor's "Name,"
"Postal address," "Email address," "Payment Information," and "Internet or other

---

[2] The Court may consider Mattress Firm's pop-up Cookie Banner and Privacy Policy
because the Amended Complaint cites and explicitly references them. Appx45-46
¶¶ 84–85; *see In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (courts
may consider documents referred to in complaint on motion to dismiss); *Buck v.
Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider
"matters incorporated by reference or integral to the claim [as well as] items subject
to judicial notice" (cleaned up)); *see also* p. 49 *infra*.

electronic network activity information" may be collected, that Mattress Firm "collect[s] information" from website visitors "passively," and that information may be shared with "operational vendors" to provide Mattress Firm with "operational support services." Appx84-89; *see also* Appx99-103.

### C. The District Court Dismissed Hasson's Suit for Lack of Personal Jurisdiction and Denied Hasson's Request for Jurisdictional Discovery.

In August 2022, Hasson sued FullStory in the United States District Court for the Western District of Pennsylvania. Appx18. Hasson asserted a claim under the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Pennsylvania Wiretap Act" or "Wiretap Act") and a common law intrusion upon seclusion claim. Appx49-53. Hasson brought these claims on behalf of a putative class of "[a]ll natural persons in the Commonwealth of Pennsylvania whose Website Communications were captured in Pennsylvania through the use of FullStory software." Appx47 ¶ 87.

After Hasson amended his complaint in December 2022, Appx19 (ECF 23), FullStory moved to dismiss for lack of personal jurisdiction and for failure to state a claim. *See* Appx20 (ECF 28). The district court granted FullStory's motion to dismiss for lack of personal jurisdiction. *See* Appx13. After noting that Hasson did not contend that FullStory could be subject to general jurisdiction in Pennsylvania, Appx7, the district court held that there was no basis for specific jurisdiction over

FullStory.  Appx8.

The district court held that Hasson could not satisfy the "effects" test for specific personal jurisdiction set out in *Calder v. Jones*, 465 U.S. 783 (1984).  Appx8. As the court explained, "Hasson is not able to show that FullStory expressly aimed its allegedly tortious conduct at Pennsylvania." Appx8.  The district court found that "FullStory did not expressly aim its software at Pennsylvania"; rather, FullStory "contracted with a Texas company to embed software on its website." Appx8.  Hasson's allegations that FullStory "has other Pennsylvania clients" using its software on other websites were "not enough to demonstrate that FullStory has expressly aimed its conduct at Pennsylvania for the purposes of the present case." Appx8. That is because "[t]he website upon which Mr. Hasson bases his claims is Mattress Firm's, and other websites in Pennsylvania are not relevant to his claim." Appx8-9.

The district court further held that allowing the lawsuit to proceed in Pennsylvania "would place an undue burden upon FullStory." Appx9.  The court noted that FullStory is "headquartered in Georgia" and Mattress Firm is "a Texas company."[3]

---

[3] The district court granted FullStory's motion for judicial notice as to Mattress Firm's state of incorporation and principal place of business, and denied the motion as to Mattress Firm's pop-up consent banners and privacy policies because the "matter is being resolved on a jurisdictional basis." Appx4.  If this Court reaches FullStory's alternative argument that the Amended Complaint fails to state a claim, it may consider Mattress Firm's pop-up consent banners and privacy policies as documents referred to in the complaint. *See* p. 5 n.2 *supra*.

Appx9. The district court held that the "interests of justice would not be served if FullStory were required to defend itself against this lawsuit in Pennsylvania." Appx9.

The district court denied Hasson's motion for leave to conduct jurisdictional discovery to establish "that FullStory has clients in Pennsylvania." Appx10. That discovery was unnecessary because the district court accepted as true Hasson's allegations that FullStory had Pennsylvania clients and, in any event, "such additional alleged websites involving Pennsylvania contacts are irrelevant for the purposes of finding specific jurisdiction in this case" because they did not "relate to" Hasson's claims against FullStory. Appx11. "The website upon which Mr. Hasson bases his claims is Mattress Firm's; other potential websites of other Pennsylvania clients are not relevant." Appx11.

Having concluded that it lacked jurisdiction over FullStory, the district court dismissed the complaint without deciding whether Hasson had stated a claim. Appx12.

## SUMMARY OF ARGUMENT

I. This Court should affirm the dismissal of Hasson's Amended Complaint for lack of personal jurisdiction.

A. Hasson conceded in the district court that *Calder*'s "effects" test governs the personal jurisdiction analysis for tort claims, which he clearly asserts here. Hasson's new argument that *Calder* is the wrong test is unavailing for two reasons. *First*, the argument is forfeited because he failed to contest *Calder*'s application below. *Second*, the argument is foreclosed by this Court's precedent, which squarely holds that *Calder* applies to intentional tort claims.

B. The district court correctly held that Hasson failed to carry his burden of establishing jurisdiction because he did not satisfy *Calder*'s "express aiming" requirement.

1. Hasson did not allege facts to show that FullStory "expressly aimed" its allegedly tortious conduct at Pennsylvania. Hasson now argues that FullStory's national presence should be sufficient to show that FullStory expressly aimed its conduct at every state, including Pennsylvania. But courts around the country have dismissed similar arguments in suits over session replay code brought against other code providers and website operators. The district court correctly reached the same result.

Hasson's allegation that the "interception" of his communications occurred in Pennsylvania does not change this result. Even assuming that were true, the interception occurred in the Commonwealth only because Hasson made it happen there. Personal jurisdiction depends on the contacts that a defendant initiates with the forum, not a plaintiff's unilateral action.

2. Although the district court did not reach the issue, Hasson also fails to allege that FullStory "knew" that its software would allegedly cause harm in Pennsylvania. Hasson argues that FullStory satisfies *Calder*'s knowledge requirement because it collected geolocation data from Pennsylvanians and allegedly profited from that data collection. But as this Court has consistently held, knowledge of an individual's location is insufficient to establish jurisdiction under *Calder* because it does nothing to show whether defendants *knew* that the plaintiff would suffer harm there.

C. Hasson cannot establish personal jurisdiction by invoking the "traditional" test. When this Court concludes that a plaintiff asserting an intentional tort claim has not satisfied *Calder*, its personal jurisdiction analysis is complete. The Court does not then consider whether personal jurisdiction exists under the traditional test. That extra step is unnecessary because Hasson's failure to establish personal jurisdiction under *Calder* means he necessarily fails to establish jurisdiction under the traditional test.

D.  The district court also correctly held that exercising jurisdiction over Full-Story would be unreasonable here.  The court did not hold, as Hasson suggests, that "the interests of justice" prevented it from exercising jurisdiction that otherwise would have been proper.  The court instead held only that Hasson's allegations were insufficient to satisfy either *Calder* or the reasonableness inquiry.

II.  The district court properly exercised its discretion in denying Hasson's motion for leave to take jurisdictional discovery.  Jurisdictional discovery was unnecessary because Hasson sought discovery to establish facts that the district court assumed were true based on the allegations in the Amended Complaint and, in any event, were irrelevant to the jurisdictional inquiry.  Allowing the requested discovery here would amount to nothing more than a fishing expedition.

III.  In the alternative, the Court should affirm the dismissal of Hasson's Amended Complaint for failure to state a claim under Rule 12(b)(6).

A.  Hasson fails to plead a Pennsylvania Wiretap Act claim for three independent reasons.

1.  Hasson does not plausibly allege that Session Replay Code is an "[e]lectronic, mechanical or other device."  18 Pa. Cons. Stat. § 5702.  "Device," by its plain meaning and in the context of the statute, refers to a physical object or apparatus.  Intangible software code, embedded on a website, does not resemble the physical devices contemplated by the statute.

2.  Hasson does not plausibly allege that his mouse movements, keystrokes, and clicks on Mattress Firm's website constitute the "contents" of a communication. Mouse movements and clicks are routing information—they do not reveal the "substance" or "meaning" of any communication. *See* 18 Pa. Cons. Stat. § 5702. Hasson's name, address, and payment information, which he voluntarily entered on the website, are "record" information generated in the course of his transaction.

3.  Hasson's allegations demonstrate that he consented to any alleged interception. By visiting Mattress Firm's website, Hasson would have seen Mattress Firm's pop-up Cookie Banner, which references its Privacy Policy. Based on both of these disclosures, Hasson knew or should have known that Mattress Firm would collect some data, including through its vendor, FullStory, and by proceeding to browse the website Hasson necessarily consented to such collection.

B.  Hasson also fails to plead a common law claim for intrusion upon seclusion. He does not plausibly allege (1) an intentional intrusion, (2) a violation of a reasonable expectation of privacy, or (3) a "highly offensive" intrusion causing mental suffering, shame, or humiliation. Pennsylvania law sets a high bar for offensiveness. If the Court can exercise personal jurisdiction over FullStory, it should join the many courts that have rejected similar claims at the motion to dismiss stage and affirm.

## STANDARD OF REVIEW

This court reviews dismissal for lack of personal jurisdiction de novo. *See*

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir.

2020). Denial of a request for jurisdictional discovery is reviewed for abuse of dis-

cretion. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003).

If Hasson adequately pled personal jurisdiction, the Court could affirm on the

alternative ground that Hasson failed to state a claim. *See Hassen v. Gov't of V.I.*,

861 F.3d 108, 114 (3d Cir. 2017). To decide whether Hasson's Amended Complaint

should be dismissed for failure to state a claim, the Court should consider whether

the Amended Complaint "contain[s] sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The

plausibility standard . . . asks for more than a sheer possibility that a defendant has

acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Lutz v. Portfolio Recovery As-*

*socs., LLC*, 49 F.4th 323, 327–28 (3d Cir. 2022).

## ARGUMENT

I.   **The District Court Correctly Dismissed Hasson's Amended Complaint**
     **for Lack of Personal Jurisdiction.**

Hasson bears the burden of establishing personal jurisdiction. *Danziger*, 948

F.3d at 129. Hasson does not contend that FullStory is "at home" in Pennsylvania

such that its courts can exercise "general" jurisdiction over it. *See Bristol-Myers*

*Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (cleaned up).  Hasson instead asserts that FullStory is subject to "specific" jurisdiction—a type of jurisdiction "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

The test for specific jurisdiction depends on the type of claim asserted.  *See Remick*, 238 F.3d at 255.  For intentional tort claims, this Court applies a three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984).  *Id.*  That test requires a plaintiff to demonstrate that (1) the defendant committed an intentional tort; (2) the plaintiff "felt the brunt of the harm caused by that tort" in the forum; and (3) the defendant "expressly aimed [its] tortious conduct at" the forum, such that it "can be said to be the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256, 266 (3d Cir. 1998).  For other claims, courts apply the "traditional" test, which requires a plaintiff to establish that the defendant "purposefully availed itself of the privilege of conducting activities within" the forum, and that her claim "is related to or arises out of" those contacts.  *Id.* at 259–60 (cleaned up).  Under either analysis, due process demands that exercising jurisdiction also "comport with 'traditional notions of fair play and substantial justice.'" *Id.* at 259.

The district court correctly applied *Calder* to hold that Hasson did not establish specific jurisdiction over FullStory for his intentional tort claims.

**A.    The *Calder* "Effects" Test Applies Here.**

The district court applied *Calder* to hold that it lacked personal jurisdiction over FullStory.  Having lost under *Calder*, Hasson now changes course and argues that *Calder* "is the wrong test."  Br. 21.  The Court need not address this argument because Hasson did not preserve it.  Even if he had, the Court should still apply *Calder* because its "effects" test governs intentional tort claims like Hasson's.

**1.    Hasson Forfeited Any Argument Against Applying *Calder*.**

Hasson contends that, by applying *Calder* instead of the "traditional" test, the district court "did not apply the right legal standard."  Br. 13; *see also* Br. 2, 21.  But before the district court, Hasson did not object to *Calder*'s application.  To the contrary, Hasson argued that *Calder* applies "in tort cases."  Appx20 (ECF 34, Pl.'s Opp'n to Mot. to Dismiss at 5 ("For specific jurisdiction in tort cases, however, an 'effects' test has been articulated by the Supreme Court in *Calder* . . . .")).

This Court has "consistently held that it will not consider issues that are raised for the first time on appeal."  *Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir. 1994).  Because Hasson never argued in the district court that *Calder* is the wrong test—and, indeed, argued the contrary—the Court should not consider this new argument.

### 2. Even if Hasson's Argument Was Preserved, *Calder* Would Apply Because Hasson Asserts Intentional Tort Claims.

Even if preserved, Hasson's argument against applying *Calder* lacks merit because *Calder* applies to intentional tort claims like those asserted here.

Hasson does not—and cannot—dispute that he asserts intentional tort claims. Hasson alleges a violation of the Pennsylvania Wiretap Act and common-law "intrusion upon seclusion." Appx49-53. For each claim, Hasson specifically alleges that FullStory acted "intentionally." Appx51, 52 ¶¶ 110, 119. And each claim requires that FullStory acted intentionally. *See* 18 Pa. Cons. Stat. § 5703(1) (must "[i]ntentionally intercept" "communication"); *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1186–87 (Pa. Super. Ct. 1988) (must "intentionally intrude[]" on "seclusion of another" (quoting Restatement (Second) of Torts § 652B)).

This Court applies *Calder* to determine whether personal jurisdiction exists for intentional tort claims. Indeed, this Court's formulation of the *Calder* "effects" test is specifically articulated to apply to intentional torts, with the first element asking whether "the defendant committed an intentional tort." *IMO Indus.*, 155 F.3d at 261. Although this Court may apply a different analysis to other claims, it has held that it *must* apply *Calder* to intentional tort claims. *Remick*, 238 F.3d at 256–57, 260 (explaining that the Court "must apply [] *Calder*" to "intentional tort claims" and

applying the "traditional" test to breach of contract claims).[4]  The Supreme Court

likewise applies *Calder* "when intentional torts are involved."  *Walden v. Fiore*, 571

U.S. 277, 286 (2014).

Hasson contends that "it does not make sense to apply the 'express aiming'

requirement of *Calder*" when "the defendant's purposeful contacts with the forum

readily satisfy the first prong of the traditional purposeful availment test."  Br. 42.

But it is Hasson's proposed approach that does not make sense.  Under the first prong

of the traditional test, a court may consider all of a defendant's contacts with the

forum, including those that are unrelated to the allegedly tortious conduct that forms

the basis of the suit.  There is no reason why contacts unrelated to the suit should

relieve a plaintiff of the obligation to show that the allegedly tortious conduct was

"expressly aimed" at the forum.  To the contrary, the Supreme Court has made clear

a court may not exercise specific personal jurisdiction based on "a defendant's un-

connected activities in the State."  *Bristol-Myers Squibb Co.*, 582 U.S. at 264.

In any event, regardless of whether Hasson thinks it makes sense, the law of

this Circuit requires applying *Calder* to intentional tort claims even when the first

prong of the traditional test is satisfied.  In *Remick*, the plaintiff asserted both breach-

---

[4] *See also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.2 (3d Cir. 2007)
(*Calder* "applies to intentional tort claims"); *Kyko Global, Inc. v. Bhongir*, 807 F.
App'x 148, 151–52 (3d Cir. 2020) (addressing "the exercise of jurisdiction . . . using
the 'effects' test provided in [*Calder*]," because "fraud is an intentional tort").

of-contract and intentional tort claims. 238 F.3d at 252. Because jurisdiction is "claim specific," *id.* at 255, the Court first addressed the breach-of-contract claim and held that the plaintiff had established jurisdiction under the traditional test, *id.* at 256–57. Under Hasson's approach, this holding under the traditional test would have precluded applying *Calder* to the intentional tort claims. But rather than following that approach and applying the traditional test to the rest of the claims, the Court applied *Calder* to "intentional tort" claims. *Id.* at 260 (citing *IMO Indus.*, 155 F.3d at 266–68). *Remick* thus defeats Hasson's contention that *Calder* should not apply if "the first prong of the traditional purposeful availment test" is satisfied. Br. 42.

Hasson contends that *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), dispels the notion that "*Calder* must be applied to every intentional tort case." Br. 44. But *Keeton* and *Calder*—which were decided on the same day—resolved different issues. *Calder* decided whether a court could exercise personal jurisdiction over an out-of-state defendant who committed an intentional tort, while *Keeton* decided whether a *plaintiff's* lack of contacts with a forum state could defeat jurisdiction. *See Calder*, 465 U.S. at 788 (describing the holding in *Keeton*). In any event, this Court no longer needs to parse the relationship between *Calder* and *Keeton* because it has already done so. In *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998), this Court articulated its three-part *Calder* "effects" after widely

canvassing the relevant precedent and discussing both *Calder* and *Keeton* at length. *See id.* at 260–66. And then in *Remick*, the Court explained that, for intentional tort claims, "we must apply the *Calder* holding, as we did in *IMO Industries*, to determine the existence of personal jurisdiction." 238 F.3d at 260.

## B.     Hasson Did Not Satisfy the *Calder* Test.

To satisfy the third element of the *Calder* test, Hasson must: (1) "point to specific activity indicating that" FullStory "expressly aimed" its allegedly tortious conduct at Pennsylvania; and (2) adequately allege that FullStory "knew" Hasson "would suffer the brunt of the harm" in Pennsylvania. *IMO Indus.*, 155 F.3d at 266. Because Hasson did not identify specific activity indicating that FullStory "expressly aim[ed] its software at Pennsylvania," the district court did not consider whether Hasson had sufficiently pled knowledge. Appx8-9.[5]

The district court correctly held that Hasson did not adequately allege that FullStory expressly aimed its allegedly tortious conduct at Pennsylvania. Hasson also did not adequately allege that FullStory "knew" Hasson "would suffer the brunt of the harm" in Pennsylvania.

---

[5] The district court did not need to address the other elements of the *Calder* test because Hasson failed to demonstrate that FullStory had "expressly aimed" its conduct at Pennsylvania. *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) ("Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements.").

### 1. The District Court Correctly Held That FullStory Did Not Expressly Aim Its Conduct at Pennsylvania.

The district court held that Hasson could not satisfy *Calder*'s "expressly aimed" requirement because he does not allege that FullStory expressly aimed its allegedly tortious conduct at Pennsylvania.  Appx8.  Hasson does not allege that Georgia-based FullStory, a vendor of session replay code, could control where, when, and how Texas-based Mattress Firm used that code on its nationally accessible website.[6]  FullStory's connection to Pennsylvania rests solely on Mattress Firm's use of the FullStory Script on Mattress Firm's nationally accessible website, and Hasson's unilateral decision to access Mattress Firm's website in the Commonwealth.  Those actions cannot serve as the basis for jurisdiction.  *See Walden*, 571 U.S. at 285–86.

#### a) FullStory Does Not Expressly Aim Its Conduct Wherever Websites That Use Its Session Replay Code Are Accessible.

Hasson alleges that his privacy was violated when he visited Mattress Firm's website because Mattress Firm had embedded FullStory's session replay code on its

---

[6] Although Hasson speculates on appeal that FullStory could have taken measures to prevent collection of Pennsylvanians' data, Br. 40, this Court may disregard this argument because Hasson does not cite any factual allegations in the Amended Complaint for this proposition, and, in any event, such an ability does not show express aiming.

website. Appx33 ¶¶ 39–40. But Hasson does not allege that Mattress Firm embedded that code in Pennsylvania. Nor could he, given that neither Mattress Firm nor FullStory is based in Pennsylvania. Hasson instead argued that FullStory expressly aimed its conduct at Pennsylvania because Mattress Firm's website used the FullStory Script and he accessed the website while in Pennsylvania. But as the district court explained, Hasson's allegation that Mattress Firm used the FullStory Script is not enough to satisfy *Calder*'s "express aiming" prong because the "[m]ere operation" of a website using session replay code "does not cause a website provider (or third-party vendor) to expressly aim its conduct at the forum state." Appx8.

Hasson contends the district court applied an "overly strict application of the 'effects' test." Br. 21, 42. By his telling, the court misapplied *Calder* by focusing on FullStory's suit-specific conduct, and in any event, allegations that a defendant's conduct touches every state are sufficient to show "express aiming" in every state. Br. 42–43. That is not an argument that the district court misapplied *Calder*. It is simply a disagreement with *Calder* itself.

Hasson's argument cannot be reconciled with this Court's decision in *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001). There, a Pennsylvania plaintiff asserted intentional tort claims against an out-of-state website operator for posting the plaintiff's picture, allegedly without permission. 238 F.3d at 259. This Court held that the "*Calder* 'effects test' [wa]s clearly not satisfied." *Id.* Because the website "was

21

accessible worldwide, there is no basis to conclude that the defendants expressly aimed their allegedly tortious activity at Pennsylvania." *Id.*[7]

Courts across the country have reached the same result, including in virtually identical cases. Courts have dismissed wiretap claims against FullStory and other session replay code providers for lack of personal jurisdiction because provision of the software to nationally accessible websites is not "express aim[ing]." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 515 (C.D. Cal. 2021) (no personal jurisdiction over FullStory because it was not enough to allege Nike's website was "accessible to California residents" or that "it was foreseeable FullStory's services would be used to record California users"); *Doe v. FullStory, Inc.*, No. 23-cv-00059-WHO, slip op. at 18–19 (N.D. Cal. Jan. 17, 2023) (ECF 115) (no personal jurisdiction over Full-Story because software lacked "forum-specific focus"); *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *4 (E.D. Cal. Sept. 30, 2022) (no personal jurisdiction over

---

[7] Hasson attempts to limit *Remick*'s effect by pointing to other claims over which the court could exercise jurisdiction. Br. 31 n.2. Hasson ignores that this Court applied the "traditional" test to Remick's breach-of-contract claim, and thus considered for that claim "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256. Applying *Calder* to the intentional tort claims, the *Remick* court determined it had jurisdiction over Remick's claim for tortious interference with contract because the claim was "necessarily related to the contract" over which it had jurisdiction, but it lacked jurisdiction over the other intentional tort claims. *Id.* at 259–60.

another session replay code provider); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *8 (E.D. Cal. May 26, 2021) (same). District courts have also reached the same result in cases involving the website operators themselves.[8]

Courts of appeals have uniformly rejected the argument that accessibility of a website in a forum is sufficient to satisfy *Calder*'s express aiming requirement. As these courts have observed, "if having an interactive website were enough" to satisfy *Calder*, there would be "no limiting principle" and a defendant website operator would be subject to personal jurisdiction "in every spot on the planet where that interactive website is accessible." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803; *see also Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state."). Such a rule "would be too broad to comport with due process" and would "lead to the eventual demise of all restrictions

---

[8] *E.g.*, *Schnur v. Papa John's Int'l, Inc.*, 2023 WL 5529775, at *7 (E.D. Pa. Aug. 28, 2023) (rejecting argument that Papa John's nationally accessible website "specifically targets Pennsylvanians"), *appeal docketed*, No. 23-2573 (3d Cir. Aug. 30, 2023); *Jones v. Papa John's Int'l, Inc.*, 2023 WL 7155562, at *6–7 (E.D. Mo. Oct. 31, 2023) (rejecting argument that Papa John's "interactive website[]" was sufficient to show Papa John's "'directed' its website and app at Missouri any more than any other state"), *appeal docketed*, No. 23-3606 (8th Cir. Nov. 30, 2023); *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *7–8 (S.D. Cal. July 17, 2023) (similar); *Curd v. Papa John's Int'l, Inc.*, 2023 WL 6121152, at *6 (D. Md. Sept. 19, 2023) (similar).

on personal jurisdiction." *Briskin*, 87 F.4th at 417, 421 (cleaned up).  These concerns are even greater here because Hasson does not seek to establish jurisdiction over the website operator who made its website accessible in the forum, but over a vendor whose code was used on that website.

<blockquote>

**b)** **The "Express Aiming" Analysis Does Not Turn on Whether an Electronic Communication Was Allegedly Intercepted in the Forum.**

</blockquote>

Hasson contends that FullStory expressly aimed its allegedly tortious conduct at Pennsylvania because, under this Court's interpretation of the Pennsylvania Wiretap Act, FullStory intercepted his communications in the Commonwealth.  Br. 26, 30–31 (discussing *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022)).  This Court's prediction of how the Pennsylvania Supreme Court would interpret Pennsylvania law is not enough to satisfy *Calder*.

Hasson does not contend that FullStory's allegedly tortious conduct occurred entirely in Pennsylvania.  For example, he does not allege—and does not argue on appeal—that FullStory contracted with Mattress Firm in Pennsylvania or that Mattress Firm embedded the session replay code in its website there.  He instead attempts to downplay the significance of this alleged conduct by arguing that "the location of [FullStory's] 'contract' with Mattress Firm is a classic red herring because it is not a significant fact."  Br. 21.

Hasson vastly understates the significance of his allegations regarding this out-of-state conduct. Mattress Firm could use the FullStory Script on its website only because it had contracted with FullStory to do so, and the use of that computer code is at the heart of Hasson's claims. Hasson does not—and could not credibly—argue that every website on the internet violates the Pennsylvania Wiretap Act when it receives data from or about a web visitor. What makes his visit to Mattress Firm's website different—in Hasson's view—is that the website included a recording "device" prohibited by Pennsylvania law. Appx50 ¶ 106. Hasson alleges that the FullStory Script is that unlawful device and thus Hasson's privacy rights were allegedly violated because Mattress Firm embedded that script in its website. Appx50 ¶ 106. The district court therefore correctly held that *Calder*'s "express aiming" requirement is not satisfied where, as here, the intentional conduct that allegedly made the defendant's actions tortious was not "expressly aimed" at the forum. Appx8-9.[9]

---

[9] Hasson's attempt to distinguish *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020), supports this conclusion. There, the Fourth Circuit explained that the mere accessibility of Marriott's website in South Carolina was insufficient to exercise jurisdiction over the plaintiff's claim because the conduct relevant to the breach-of-contract action happened outside of South Carolina. *Id.* at 140. Because Hasson failed to allege where Mattress Firm embedded the FullStory Script on its website, the district court's reliance on *Fidrych* was proper and consistent with this Court's decision in *Remick*. *See supra* pp. 21–22.

Attempting to downplay the importance of FullStory's out-of-state conduct to his claims, Hasson argues that "the *most significant* fact in the case" is that the allegedly tortious interception occurred in Pennsylvania. Br. 26–27. But Hasson cannot establish jurisdiction simply by labeling one element of his cause of action as the "most important." Indeed, "where the plaintiff experienced a particular injury or effect" does not control the personal jurisdiction analysis. *E.g.*, *Walden*, 571 U.S. at 290; *see also Marten*, 499 F.3d at 299 (finding no personal jurisdiction when the plaintiff "has alleged only that defendants harmed him while he happened to be residing in Pennsylvania").

Nor can Hasson establish jurisdiction by focusing on where his communications were allegedly intercepted because he is entirely responsible for that location. Were jurisdiction to attach here, the link between FullStory and Pennsylvania would be Mattress Firm's decision to make its website accessible in Pennsylvania, and Hasson's unilateral decision to access the website from there. But the law is clear that Hasson's own actions cannot be the basis for jurisdiction. *See, e.g.*, *Walden*, 571 U.S. at 286, 290–91 (citation omitted) (no personal jurisdiction where plaintiffs would have experienced the same alleged injury "wherever else they might have traveled"); *accord Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) ("Even in the context of an intentional tort . . . the 'unilateral activity of a plaintiff' do[es] not establish a basis for personal jurisdiction." (citation omitted)).

This principle applies even when the plaintiff's location determines where part of the allegedly tortious conduct occurred. In *Remick*, for example, the Pennsylvania plaintiff brought a defamation claim and alleged that the purportedly defamatory letter was "published" in Pennsylvania. 238 F.3d at 259. Even though "publication" is a necessary element of a defamation claim, 42 Pa. Cons. Stat. § 8343(a)(2), the plaintiff's allegation that publication occurred in Pennsylvania was insufficient to satisfy the *Calder* test. *See Remick*, 238 F.3d at 259. Because the letter was published throughout the country, it was not "expressly aimed" at Pennsylvania more than it was aimed anywhere else. *Id.* The district court correctly reached the same conclusion here.[10]

---

[10] Neither *Johnson v. Griffin*, 85 F.4th 429 (6th Cir. 2023), nor *Hood v. American Auto Care, LLC*, 21 F.4th 1216 (10th Cir. 2021), help Hasson. In *Johnson*, the Sixth Circuit concluded that Tennessee courts could exercise personal jurisdiction over celebrity Kathy Griffin because her allegedly tortious tweets were expressly targeted at Tennessee. *Id.* at 435. Indeed, Griffin had "tagged" a Tennessee company and implored them to fire a Tennessee-based CEO for conduct that occurred exclusively in Tennessee, and the CEO was fired in Tennessee. *Id.* In *Hood*, meanwhile, the Tenth Circuit relied on the traditional test to conclude that a Colorado court could exercise personal jurisdiction over a Florida-based company alleged to have violated the Telephone Consumer Protection Act for making robocalls to Colorado residents. 21 F.4th at 1224. There, unlike here, the Florida telemarketer directed calls specifically to people in Colorado as part of its "telemarketing efforts directed at Colorado." *Id.* Hasson fails to allege any comparably targeted activity.

### 2. Hasson Failed to Allege That FullStory "Knew" Its Software Would Allegedly Cause Harm in Pennsylvania.

To satisfy *Calder*, Hasson also had the burden of demonstrating that FullStory "knew that [Hasson] would suffer the brunt of the harm caused by the tortious conduct in the forum." *IMO Indus.*, 155 F.3d at 266. The district court did not reach this issue, Appx8-9, but this Court may affirm because Hasson failed to allege that FullStory "knew" its software would harm Hasson in Pennsylvania.

Hasson principally argues that FullStory knew it would harm him in Pennsylvania because the FullStory Script collects data, including geolocation data, from visitors to Mattress Firm's website. Br. 33 (citing Appx37 ¶¶ 56–58). But Hasson does not allege that FullStory knew Hasson's location in advance of the alleged interception. Nor is general knowledge of an individual's residence, without more, sufficient to satisfy *Calder*. *See Marten*, 499 F.3d at 298–99 (requiring "additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the [intentional] conduct"); *Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010) (same).

For that reason, "[w]hile knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*," that "alone is insufficient to satisfy the targeting prong of the effects test." *IMO Indus.*, 155 F.3d at 266. Hasson's allegations that FullStory "knew" it would "inevitabl[y]" collect data from Pennsylvania

residents because Mattress Firm embedded session replay code on its nationally accessible website is therefore insufficient to satisfy *Calder*'s knowledge requirement. Appx37 ¶¶ 56–58; *see also Remick*, 238 F.3d at 259 ("Given that the website . . . was accessible worldwide, there is no basis to conclude that the defendants . . . kn[ew] that harm was likely to be caused [in the forum]."); *see also Sacco*, 2022 WL 4663361, at *5 n.2 (no knowledge of harm in California where "alleged harm would have occurred regardless of the [plaintiff's] location").

In the district court, Hasson did not argue that FullStory's alleged profits were sufficient to establish knowledge. *See* Appx20 (ECF 34, Pl.'s Br. in Opp'n to Mot. to Dismiss at 11). He nevertheless argues on appeal that FullStory included geolocation data in an "analytics package" it provided to Mattress Firm "for a fee," and that this economic benefit satisfies *Calder*'s knowledge requirement. Br. 33–34. This Court need not consider this argument because it was not raised below. *Harris*, 35 F.3d at 845.

Regardless, Hasson's new argument lacks merit. At most, the cases on which he relies (Br. 33–34) suggest that profits derived from activities targeted at the forum are relevant to determining whether a defendant "expressly aimed" its conduct at a forum or that it "purposefully availed" itself of doing business there. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (California profits from California-targeted advertisements were relevant to *Calder*'s "express

aiming" inquiry); *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) (Virginia profits from Virginia-targeted advertisements were one factor to demonstrate "purposeful availment" under traditional test). But that is a separate question from whether a defendant *knew* that the plaintiff would suffer harm in a forum. *IMO Indus.*, 155 F.3d at 266. If deriving profit from a forum were alone sufficient to satisfy *Calder*'s knowledge requirement, it would subject website operators and third-party vendors alike to jurisdiction in every state.

## C. Hasson Cannot Establish Personal Jurisdiction by Invoking the Traditional Test.

This Court has never done what Hasson asks it to do here: Hold that personal jurisdiction exists for intentional tort claims when jurisdiction is lacking for those claims under *Calder*. The Court need not apply the traditional test to intentional tort claims that fail *Calder* because they necessarily will also fail the traditional test.

### 1. Hasson Cannot Use the Traditional Test as an End-Run Around *Calder*.

This Court does not determine personal jurisdiction for intentional tort claims by applying both *Calder* and the traditional test. Instead, this Court applies *Calder*, and if that test is not satisfied, it holds that personal jurisdiction is lacking. *See, e.g.*, *Remick*, 238 F.3d at 258–60 (applying only *Calder* for intentional tort claims); *IMO Indus.*, 155 F.3d at 268 (same). The district court correctly followed this approach here. Appx8-9.

The Court does not need to apply both tests because plaintiffs asserting intentional tort claims cannot satisfy the traditional test if they cannot satisfy *Calder*. Although the two tests are "different," they are essentially "cut from the same cloth." *Marten*, 499 F.3d at 297. In most cases, a court would reach the same result regardless of which test applied. And in the rare case that the different tests lead to different results, it is because a plaintiff can satisfy *Calder* but not the traditional test. *See IMO Indus.*, 155 F.3d at 265. For that reason, courts have treated the traditional test "as imposing a higher bar for Plaintiffs seeking to demonstrate the presence of personal jurisdiction." *Kyko Global, Inc. v. Bhongir*, 2019 WL 1493400, at *9 n.14 (W.D. Pa. Apr. 4, 2019), *aff'd*, 807 F. App'x 148 (3d Cir. 2020); *Patchen v. McGuire*, 2012 WL 4473233, at *6 n.10 (E.D. Pa. Sept. 27, 2012) (plaintiff "who cannot establish sufficient contacts under the effects test will also fail under the standard test").

Just as in *Remick* and *IMO*, the Court can apply only *Calder* and hold that Hasson did not establish personal jurisdiction for his intentional tort claims. The Court need not separately apply the traditional test. But if it applies that test, it should reach the same result: Hasson cannot establish personal jurisdiction for his intentional tort claims under the traditional test.

## 2. FullStory's Alleged Contacts with Other Websites Operating in Pennsylvania Are Irrelevant to the Jurisdictional Analysis.

The district court rejected Hasson's argument that FullStory's contacts with any other websites operating in Pennsylvania were "relevant" to his claim. Appx8-9. On appeal, Hasson contends that the district court erred by not considering all of FullStory's alleged business activities in Pennsylvania, including FullStory's alleged "contracts to provide its software to Pennsylvania companies and websites" and services it provides to companies "who maintain a website in Pennsylvania." Br. 27 (citing Appx25 ¶ 8, Appx33 ¶ 40).

Hasson's argument ignores the Supreme Court's repeated instruction that, for a court to exercise specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 582 U.S. at 262 (cleaned up). This requirement ensures that jurisdiction is limited to cases in which "the defendant's suit-related conduct" created "a substantial connection with the forum State." *Walden*, 571 U.S. at 284–85.

The Supreme Court has made clear that a "corporation's continuous activity . . . within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Bristol Myers*, 582 U.S. at 264 (cleaned up). For that reason, the Supreme Court has repeatedly held that a plaintiff cannot establish specific jurisdiction merely by showing that the defendant sells its products in the state. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 931 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"); *Bristol Myers*, 582 U.S. at 264 (same).

The district court correctly held that FullStory's alleged contacts with other unidentified companies in or operating in Pennsylvania were irrelevant to Hasson's claims. Hasson alleges harm from visiting Mattress Firm's website and Mattress Firm's website alone. *See* Appx40 ¶ 71. His claims therefore do not arise out of, or relate to, any other contacts FullStory allegedly has with other companies.

Hasson relies on *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), to argue that all of FullStory's contacts with Pennsylvania are relevant to his jurisdictional argument. But *Ford* does not support his argument. There, the Supreme Court held that, because Ford had "advertised, sold, and serviced" two car models in Minnesota and Montana, it had established sufficient contacts with those states to answer for product liability claims relating to those two models. *Id.* at 1026, 1028. Central to the Court's analysis was the fact that Ford "systematically served a market in [the relevant states] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 1028. Ford's actions in Minnesota and Montana were thus "related to" the subject of the litigation because the suits concerned the specific product that Ford marketed and maintained in the forum.

Contrary to Hasson's suggestion, *Ford* did not eliminate any need to establish a substantial connection between a plaintiff's claims and a defendant's forum contacts. Br. 23. As *Ford* acknowledges, the "arise out of or relate to" standard "incorporates real limits" to provide protections for foreign defendants. *Ford*, 141 S. Ct. at 1026. "Arise out of" looks to causation. *Id.* While "relate to" is broader and recognizes that a strict causal relationship is not always required, "that does not mean anything goes"; rather, "relate to" still incorporates "adequate[] protect[ions] [for] defendants foreign to a forum." *Id.*[11]

This Court's post-*Ford* decisions continue to require a substantial connection between a defendant's suit-related conduct and the forum. In *Hepp v Facebook*, 14 F.4th 204 (3d Cir. 2021), the Court noted that *Ford* reiterated that personal jurisdiction requires "a *strong* relationship among the defendant the forum, and the litigation." *Id.* at 207–08 (emphasis added) (cleaned up). The *Hepp* plaintiff brought a claim for misappropriation of likeness, and she attempted to establish personal jurisdiction by alleging that the defendants "targeted their advertising business to Pennsylvania," and they had "an online merchandise store that sells products to

_____

[11] Hasson treats *Ford* as resolving the question of how to apply the traditional test to website-based claims, but the Supreme Court expressly declined to address that issue. *See Ford Motor*, 141 S. Ct. at 1028 n.4 (noting that internet transactions "may raise doctrinal questions of their own").

Pennsylvanians." *Id.* at 208. Those allegations were insufficient under *Ford* because "none of these contacts forms a strong connection to the misappropriation of Hepp's likeness. Hepp did not allege the merchandise featured her photo. Nor did she allege [defendants] used her likeness to sell advertising." *Id.* Accordingly, unlike in *Ford*—where there was a "strong connection" between the plaintiff's claims and Ford's contacts with the forum—personal jurisdiction was lacking in *Hepp*, because the "connection" was "too weak." *Id.*

Similarly, in *Martinez v. Union Officine Meccaniche S.P.A.*, 2023 WL 3336644 (3d Cir. May 10, 2023), the Court affirmed a dismissal for lack of personal jurisdiction because the plaintiff failed to establish a "strong relationship" between the forum and his claims, as required under *Ford* and *Hepp*. *Id.* at *2. There, a custodian severely injured while cleaning a calendaring machine in New Jersey could not bring product liability claims against an Italian company because the company's general business contacts with the Garden State "did not involve core characteristics of the products liability claim," such as the "design and manufacture" of the product. *Id.*

Other courts of appeals have similarly recognized that *Ford* "did not say that 'anything goes.' Quite the contrary. For specific jurisdiction, a plaintiff must link the defendant's suit-related conduct to the forum. Mere market exploitation will not suffice." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 324 (5th Cir. 2021)

(citation omitted). In *Briskin*, the Ninth Circuit held that specific jurisdiction was lacking—even though Shopify had a fulfillment center, a physical location, and over 80,000 merchant-customers in California—because the plaintiff's web-based claims had "nothing to do with Shopify's brick-and-mortar operations in the state." 87 F.4th at 414; *see also Fidrych*, 952 F.3d at 141 (Marriott's "ninety hotels in the state" had "nothing to do with" plaintiffs' personal injury claims and thus were "not relevant" to specific jurisdiction).

As these cases demonstrate, Hasson cannot establish personal jurisdiction over FullStory by alleging that his privacy was violated when he visited Mattress Firm's website by showing that FullStory entered into contracts with companies in Pennsylvania whose websites Hasson did not allegedly visit.

### 3. Mattress Firm's Use of FullStory Script on Its Nationally Accessible Website Does Not Satisfy the Traditional Test.

Hasson cannot use the traditional test to establish personal jurisdiction based on FullStory's conduct for the same reasons he could not do so under *Calder*. Hasson's own conduct cannot show FullStory directed its conduct at Pennsylvania. Purposeful availment is also not established by allegations that Mattress Firm embedded FullStory's code on its nationally accessible website.

As under *Calder*, Hasson's own actions in visiting Mattress Firm's website are irrelevant under the traditional test. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial

connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Hasson's unilateral decision to visit Mattress Firm's website from Pennsylvania does not confer jurisdiction. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) ("the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State" (cleaned up)).

Similarly, as under *Calder*, a third-party vendor's providing code for a nationally accessible website is insufficient to establish purposeful availment under the traditional test. Under that test, a website operator (or a third-party vendor) must "intentionally interact with the forum state via the web site" to create jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003). In *Toys "R" Us*, this Court rejected the idea that "the mere operation of a commercially interactive website" was enough to subject the operator to jurisdiction. *Id.* at 452. Instead, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* at 455.

Again, if that were not the rule, website operators and third-party vendors would be subject to personal jurisdiction everywhere, which would offend due process. *See, e.g.*, *Admar Int'l v. Eastrock, LLC*, 18 F.4th 783, 788 (5th Cir. 2021)

(rejecting the possibility that operating a website could create "minimum contacts with all 50 states" because accessibility "does not constitute the purposeful availment required to establish personal jurisdiction under longstanding principles of due process"); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (similar); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (similar).[12]

District courts that have analyzed whether a court can exercise jurisdiction over website operators using session replay code under the traditional test have concluded they cannot. *E.g.*, *Rosenthal v. Bloomingdale's, Inc.*, 2023 WL 5179506, at *2–3 (D. Mass. Aug. 11, 2023) (defendant's generally accessible website did not "initiate contact with the forum state" to satisfy the traditional test), *appeal docketed*, No. 23-1683 (1st Cir. Aug. 23, 2023); *Alves v. Goodyear Tire & Rubber Co.*, __ F. Supp. 3d __, 2023 WL 4706585, at *7 (D. Mass. July 24, 2023) ("The mere availability of a generally accessible website operated out-of-state, however, is not enough

---

[12] Hasson attempts to distinguish *Walden* and *World-wide Volkswagen* and relies on two out-of-circuit cases to support his contention that "[w]hen a defendant's contacts in the forum are a 'predictable consequence' of a national business model, they are not 'random, fortuitous, or attenuated.'" Br. 37 (citing *Mavrix Photo*, 647 F.3d at 1230 & *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022)). Hasson ignores that, in each, the court was analyzing the sale of a physical product that served as the source of injury. *Mavrix Photo*, 647 F.3d at 1230; *NBA Prop*, 46 F.4th at 625. Hasson's privacy-related harms do not depend on the sale of a physical product, and he purchased none. Appx40 ¶ 71.

of a connection to warrant this Court's exercise of personal jurisdiction" under the traditional test). If a court cannot exercise jurisdiction over website operators who use session replay code—as these courts have correctly held—then they necessarily cannot exercise jurisdiction over the third-party vendors whose code is embedded on that site.

### D. The Exercise of Jurisdiction Would be Unreasonable.

After holding that Hasson failed to satisfy *Calder*, the district court further held that "[t]he interests of justice would not be served if FullStory were required to defend itself against this lawsuit in Pennsylvania." Appx9. Hasson challenges this holding, arguing that FullStory failed to carry its "heavy" burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"—which it must do "once the plaintiff has made out a prima facie case of minimum contacts." Br. 45 (cleaned up).

Hasson's argument overlooks the fact that he never made out a prima facie case of minimum contacts. The district court did not hold, as Hasson suggests, that "the interests of justice" prevented it from exercising jurisdiction that otherwise would have been proper. The court instead held that Hasson's allegations—*i.e.*, that a Georgia-headquartered company contracted with a Texas-based company to provide software for its website—were insufficient to satisfy either *Calder* or the reasonableness inquiry. Appx9-10.

The district court could have ended its analysis after holding that Hasson failed to satisfy *Calder*. *See IMO Indus.*, 155 F.3d at 259 (declining to consider reasonableness because plaintiff failed to demonstrate minimum contacts). But it was hardly error for the court to address both parts of the personal jurisdiction analysis and to hold that neither was satisfied.

## II. The District Court Did Not Abuse Its Discretion in Rejecting Hasson's Request for Jurisdictional Discovery.

Hasson contends that if he did not sufficiently allege personal jurisdiction, he should have been permitted to conduct jurisdictional discovery. The district court acted well within its discretion in denying discovery. *Toys "R" Us*, 318 F.3d at 455 (denial of discovery request reviewed for abuse of discretion).

Hasson misunderstands the limited purpose of jurisdictional discovery. Courts do not—as Hasson suggests—freely grant leave to conduct discovery where a complaint lacks allegations sufficient to establish personal jurisdiction. Instead, jurisdictional discovery assists a plaintiff who has adequately alleged personal jurisdiction to prove those allegations. *See, e.g.*, *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (when personal jurisdiction is disputed, a "plaintiff need only plead prima facie case to survive the initial motion, but must eventually establish jurisdiction by a preponderance of the evidence" (citation omitted)).

Jurisdictional discovery is thus appropriate when a plaintiff "presents factual allegations that suggest with reasonable particularity the possible existence of the

requisite contacts between the party and the forum state." *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022) (cleaned up). But jurisdictional discovery does not allow a plaintiff to "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Euorfins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

Hasson contends that he is entitled to discovery on "the existence of any contracts between FullStory and Pennsylvania-based website clients." Br. 49. But the district court correctly concluded that this discovery was unnecessary because the court assumed that such contracts existed and because those contracts are irrelevant to his claims. Appx10-11.[13]

Hasson cannot establish personal jurisdiction based on contracts between FullStory and any website operator other than Mattress Firm because Hasson does not allege he visited any other website. Hasson cannot seek such broad discovery simply by alleging that unnamed, putative class members may have visited other, unidentified websites that use the FullStory Script. To the contrary, Hasson must establish personal jurisdiction based on his own claims. *See, e.g.*, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447–48 (7th Cir. 2020) (in putative class action, "the named

---

[13] Hasson quotes other discovery requests he made in the district court, but presents no argument for why it was an abuse of discretion to deny discovery on those topics. He therefore has forfeited any argument that he should be permitted discovery on them.

representatives must be able to demonstrate either general or specific personal jurisdiction"); *see also Shoemaker v. Zeitlin*, 2023 WL 3826460, at *6 (M.D. Pa. June 5, 2023) ("Specific jurisdiction usually is assessed on a claim-by-claim basis. This is true even when, like here, plaintiffs bring a putative class action because . . . a named plaintiff cannot accomplish as a representative of a class what they cannot achieve on their own." (citations omitted)).

In any event, discovery of other contracts is unnecessary because the district court assumed that such contracts existed. Appx6; *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."). No amount of discovery on these contracts would have changed the court's analysis because those contracts do not demonstrate that the "tortious conduct" that allegedly injured Hasson was expressly aimed at Pennsylvania, as *Calder* requires. *See* Part I.B *supra*. Hasson contends that the district court's conclusions that the contracts are irrelevant was based on a "far too narrow" reading of *Ford.* Br. 49. But in making this argument, Hasson simply rehashes his arguments for why his allegations were sufficient to establish personal jurisdiction. That argument is wrong on the merits, *see* pp. 31–33

*supra*, and in any event, it provides no reason to permit discovery to establish facts already assumed to be true.

## III. Alternatively, the Court Should Affirm Because Hasson Fails to State a Claim.

Even if this Court concludes the exercise of personal jurisdiction over Full-Story is proper, the district court's judgment should be affirmed on the alternative ground that the Amended Complaint fails to state a claim under Rule 12(b)(6).

### A. Hasson Fails to State a Claim Under the Pennsylvania Wiretap Act.

The Pennsylvania Wiretap Act authorizes a civil cause of action for "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter." 18 Pa. Cons. Stat. § 5725. An "intercept" is the "[a]ural or other acquisition of the *contents* of any wire, electronic or oral communication through the use of any electronic, mechanical or other *device*." *Id.* § 5702 (emphasis added). There is no liability if "all parties to the communication have given prior consent to such interception." *Id.* § 5704(4).

Hasson fails to plead a claim under the Pennsylvania Wiretap Act for three independent reasons. Specifically, Hasson has not plausibly alleged (1) the use of a

"device," (2) that FullStory intercepted the "contents" of an electronic communication, and (3) that FullStory acted without his consent.[14]

### 1. Hasson Does Not Plausibly Allege that FullStory Used a "Device."

To state a Wiretap Act claim, Hasson must allege that an electronic communication was intercepted "through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. § 5702. Hasson alleges that the FullStory Script is a "device," Appx50 ¶ 106, but computer code is not a "device" under the Wiretap Act.

The Wiretap Act defines "electronic, mechanical or other device" as "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication." 18 Pa. Cons. Stat. § 5702. When the statute was enacted, the terms "device" and "apparatus" both referred to a piece of equipment: "device" meant "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function," while an "apparatus" was "a set of materials,

---

[14] FullStory preserves the argument—foreclosed by *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022)—that Hasson failed to state a wiretapping claim because FullStory was a direct recipient of the data allegedly collected. *See* Appx20 (ECF 28, Def.'s Br. in Supp. of Mot. to Dismiss at 15).

instruments, appliances, or machinery designed for a particular use." *Webster's Third New International Dictionary* 102, 618 (1976).[15]

The rest of the statutory definition of "device" confirms that it refers to a piece of equipment. *See Commonwealth v. Fant*, 146 A.3d 1254, 1260 (Pa. 2016) ("[W]e cannot arrive at the meaning of a word, even the 'ordinary' meaning, without considering the surrounding words and provisions."). The statute provides two examples of devices: "an induction coil," and "a telecommunication identification interception device." 18 Pa. Cons. Stat. § 5702. The statute expressly defines the latter term as "equipment or device," *id.*, and the former term commonly refers to a "device" that can be "arranged . . . around the receiver portion of [a] telephone handset" to record and amplify sound, *see Commonwealth v. McCoy*, 275 A.2d 28, 29 (Pa. 1971). The statute also has three exceptions, which exclude specific types of equipment from the definition. *See* 18 Pa. Cons. Stat. § 5702 (exclusions for "telephone," "hearing aid," "[e]quipment or devices used to conduct interceptions").

Courts interpreting similar statutes have likewise held that "software is not a 'device' under its plain meaning." *See United States v. Ackies*, 918 F.3d 190, 199

---

[15] "In defining a statutory term," Pennsylvania courts "strive to determine its meaning at the time the General Assembly enacted the legislation," including by consulting dictionary definitions from the time of enactment. *Commonwealth v. Gamby*, 283 A.3d 298, 307 n.11 (Pa. 2022).

n.5 (1st Cir. 2019).[16]  Indeed, courts have reached this result in cases where the alleged device was "session replay" code.  *See Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (observing in "session replay" case that "courts have held that software . . . [does] not constitute [a] device[] under the wiretapping statutes"); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (agreeing with *Jacome*); *accord Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (software is not a "device").

In short, Hasson's conclusory allegation that the FullStory Script is an "electronic, mechanical, or other analogous device" finds no support in the statutory

---

[16] The Pennsylvania Wiretap Act is modeled after the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510 et seq.  Because the Pennsylvania Wiretap Act "is interpreted in the same way as the ECPA, the analysis and conclusions in the text apply equally."  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2003), as amended (Jan. 20, 2004).  Many state wiretapping statutes are also interpreted similarly to the ECPA.  *See, e.g.*, *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 n.1 (S.D. Fla. 2021) (Florida Security of Communications Act "was modeled after its federal counterpart, the [ECPA], so Florida follows federal courts as to the meaning of analogous provisions").

definition or case law. The Wiretap Act, when read as a whole, establishes that a "device" is a physical item—a piece of equipment—not intangible computer code.[17]

> **2. Hasson Does Not Plausibly Allege the Interception of the "Contents" of a Communication.**

To state a Wiretap Act claim, Hasson must allege that the "contents" of an electronic communication were intercepted. 18 Pa. Cons. Stat. § 5702. Specifically, the "contents" of a communication are the "information concerning the substance, purport, or meaning of that communication." *Id.*; *see also* 18 U.S.C. § 2510 (same definition in the federal ECPA). Hasson fails to plead any such allegations.

Hasson alleges that the FullStory Script intercepted his "mouse movements, clicks, [and] keystrokes." Appx23 ¶ 1. But "routing, addressing, [and] signaling information" is not the content of a communication. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 136–37 (3d Cir. 2015). In dismissing claims like Hasson's, a Pennsylvania district court observed that, "[w]hen a website user moves the cursor or clicks the mouse, it does not plausibly reveal the

---

[17] Hasson argued in the district court that his own computer could be treated as the relevant "device." That theory necessarily fails because it was not pleaded in the Amended Complaint. In any event, Hasson's computer cannot be the relevant "device" because Hasson's computer was allegedly "the origin of the intercepted message, and not the device that purportedly intercepted that message." *Commonwealth v. Diego*, 119 A.3d 370, 374 (Pa. Super. Ct. 2015) (holding that the iPad that transmitted a communication could not be treated as the device that intercepted that communication); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) (similar).

substance of any communication." *Cook v. GameStop, Inc.*, 2023 WL 5529772, at *8 (W.D. Pa. Aug. 28, 2023), *appeal docketed*, No. 23-2574 (3d Cir. Aug. 28, 2023).

Hasson also alleges that FullStory collected his personal information when he "enter[ed] his . . . name, address, email address, and payment information [] into form fields." Appx44 ¶ 76. But the "content" of a communication is different from "record" information, such as the "name," "address," and "subscriber number or identity" of a customer. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). As the Ninth Circuit explained, "'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Id.*; *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) ("shipping and billing information" are not "contents"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("user name and password" are not "contents").[18]

---

[18] One court applying California law held that alleging that a defendant recorded "a video of Plaintiff's interactions with" a website was sufficient to state a claim, *Saleh*, 562 F. Supp. 3d at 518, but the Pennsylvania Wiretap Act does not restrict silent videos without the "contents" of a communication. *See, e.g.*, *Pa. State Police v. Grove*, 119 A.3d 1102, 1110 (Pa. Cmmw. Ct. 2015), *aff'd in part, rev'd in part on other grounds*, 161 A.3d 877 (Pa. 2017). In any event, Hasson does not allege that the FullStory Script captures a contemporaneous video recording—he alleges only that a "website operator can view a visual reenactment of the user's visit" after the alleged interception. Appx30 ¶ 26.

Finally, Hasson's allegations that the FullStory Script "obtained certain information about his device, browser, and geolocation," Appx40 ¶ 72, are insufficient to allege the interception of "contents." The law is clear that automatically generated information, such as geolocation data, are not the "contents" of a communication. *See, e.g.*, *Yoon*, 549 F. Supp. 3d at 1082–83 ("location," "browser type," and "device" information not "contents"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (automatically generated data such as "geolocation data" not "contents").

### 3. Hasson's Allegations Demonstrate That He Consented to the Alleged Data Collection.

Hasson's claim also fails because FullStory could violate the Pennsylvania Wiretap Act only if it intercepted Hasson's communications without his consent. 18 Pa. Cons. Stat. § 5704(4). Yet Hasson's allegations about his visits to Mattress Firm's website demonstrate that he consented.

Consent "can be demonstrated when the person being recorded 'knew or should have known[] that the conversation was being recorded.'" *Popa*, 52 F.4th at 132 (quoting *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (alteration in original)). The "standard [for consent] is one of a reasonable person." *Byrd*, 235 A.3d at 319. As alleged in the Amended Complaint, Mattress Firm has a pop-up Cookie Banner on its website, which discloses that the website uses cookies, requires a visitor to consent to the use of cookies, and instructs that they may view Mattress

Firm's Privacy Policy. Appx45 ¶ 84; Appx66; *see also* Appx73. The Privacy Policy discloses that information such as "Name," "Postal address," "Email address," "Payment Information," and "Internet or other electronic network activity information" may be collected, that Mattress Firm "collect[s] information from you passively," and that information may be shared with "operational vendors"—such as FullStory—to "provide us with operational support services." Appx84-89; *see also* Appx99-103.

Hasson alleges that he did not consent because he "had no opportunity to review the Cookie Banner before he was wiretapped," and the "FullStory Script is not a cookie." Appx45 ¶ 84. Hasson's arguments fail for two reasons. *First*, any mouse movements or clicks that were captured before Hasson saw the Cookie Banner—which he does not deny seeing—would not be "contents" under the Pennsylvania Wiretap Act. *See* Part III.A.2 *supra*. *Second*, the Cookie Banner would put a reasonable person on notice that information would be recorded if one continued to browse the website. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016) ("Cookies allow a website to 'remember' information about a user's browsing activities."). Hasson's allegation that he proceeded to browse the website negates any suggestion that he did not consent. *See, e.g.*, *Commonwealth v. De Marco*, 578 A.2d 942, 948 (Pa. Super. Ct. 1990) ("any reasonably intelligent person leaving a message on an ordinary answering machine would have to be aware of,

and *consented by conduct to*, the recording of the message on the answering machine tape" (emphasis added)); *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001) ("[b]y the very act of sending a communication over the Internet, the party expressly consents to the recording of the message"), *aff'd*, 837 A.2d 1163 (Pa. 2003). Given the Cookie Banner and the Privacy Policy's disclosures, Hasson was on notice of and "should have known," *Byrd*, 235 A.3d at 319, that by continuing to browse Mattress Firm's website he consented to the collection of data.

In any event, a reasonable person's knowledge that he is being recorded may be "surmised from the very nature of the selected means of transmission." *Diego*, 119 A.3d at 377. "Any reasonably intelligent person, savvy enough to be using the Internet . . . would be aware of the fact that messages are received in a recorded format, by their very nature." *Proetto*, 771 A.2d at 829. Indeed, "[m]ost of us understand that what we do on the Internet is not completely private," and that "our data has to be going somewhere . . . feeding an entire system of trackers, cookies, and algorithms." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 266. "By the very act of sending a communication over the Internet," then, a website visitor "expressly consents to the recording of the message." *Proetto*, 771 A.2d at 829. By alleging that he voluntarily went to Mattress Firm's website, browsed the website, and entered data, Hasson cannot plausibly allege that he did not consent to any collection of data.

**B. Hasson Fails to State a Claim for Intrusion Upon Seclusion.**

Hasson also does not adequately plead a claim for intrusion upon seclusion, which is premised on the same alleged conduct underlying the Wiretap Act claim. To state this claim, a plaintiff must allege: (1) an intentional intrusion; (2) a violation of a reasonable expectation of privacy; and (3) a highly offensive intrusion causing mental suffering, shame or humiliation. *See, e.g.*, *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 248 (Pa. 2002); *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004) (applying Pennsylvania law). Hasson did not adequately allege any of these elements.

*First*, Hasson does not plausibly allege that FullStory "intentionally" intruded on his "private concerns." *Pro Golf*, 809 A.2d at 248. For this element, Hasson must allege that FullStory "believe[d], or [was] substantially certain, that [it] lack[ed] the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (applying Pennsylvania law). Hasson alleges no facts plausibly showing FullStory had such a belief. Nor could he. Given Mattress Firm's disclosure of the challenged data practices on its website, Appx67, the only plausible inference is that Mattress Firm—and its vendor, FullStory—believed it had permission to engage in that activity. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023) (citing *O'Donnell*

and dismissing intrusion claim for failure to allege intentional intrusion where plaintiffs "were on notice" of data collection policies based on defendant's terms of service), *appeal docketed*, No. 23-35377 (9th Cir. June 1, 2023).

*Second*, an intrusion-upon-seclusion claim "requires that the plaintiff have a reasonable expectation of privacy," *Kline*, 386 F.3d at 260, and Hasson does not plausibly allege such an expectation. Courts have refused to recognize a reasonable expectation of privacy in computer keystrokes, mouse clicks, and mouse movements, including in session replay cases. *See Saleh*, 562 F. Supp. 3d at 525 (holding that plaintiff in "session replay" case had no reasonable expectation of privacy over similar data voluntarily provided to website operator and FullStory). As one Pennsylvania court observed, "[s]hopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer." *Farst v. AutoZone, Inc.*, 2023 WL 7179807, at *4 (M.D. Pa. Nov. 1, 2023); *see also Goldstein*, 559 F. Supp. 3d at 1321 ("[T]racking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store."). And here, any expectation of privacy that Hasson may have had would not be reasonable given the disclosures in Mattress Firm's Cookie Banner and Privacy Policy. *See, e.g., United*

*States v. Bowers*, 2021 WL 2882438, at *3 (W.D. Pa. July 8, 2021) ("[W]hen a person is forewarned of the possible disclosure of information, courts have held privacy interests are not objectively reasonable.").

*Third*, Hasson does not plausibly allege that FullStory's conduct was so "highly offensive" that it "cause[d] mental suffering, shame or humiliation to a person of ordinary sensibilities." *Pro Golf Mfg.*, 809 A.2d at 248. "This is a stringent standard," *Boring v. Google, Inc.*, 598 F. Supp. 2d 695, 700 (W.D. Pa. 2009), *rev'd in part on other grounds*, 362 F. App'x 273 (3d Cir. 2010), and "it is generally accepted that a court must first determine whether a certain threshold of offensiveness exists to support the cause of action in the first place," *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *6 (E.D. Pa. Oct. 10, 2023) (granting motion to dismiss Pennsylvania intrusion upon seclusion claim).

Hasson cannot meet this stringent standard because "[t]he act of collecting [a plaintiff's] keystrokes, mouse clicks, and [personally identifiable information] is simply not the type of highly offensive act to which liability can attach." *Popa*, 426 F. Supp. 3d at 122–23 (dismissing intrusion claim); *see also In re Nickelodeon*, 827 F.3d at 294–95 (use of third-party cookies to track children was not "sufficiently offensive, standing alone, to survive a motion to dismiss"); *Cook*, 2023 WL 5529772, at *10 ("[T]he collection and disclosure of a website visitor's activity does not constitute the highly objectionable conduct needed to state a claim."). This Court

should dismiss Hasson's intrusion upon seclusion claim because the alleged conduct

is not highly offensive under Pennsylvania law.

## CONCLUSION

For the foregoing reasons, this Court should affirm.


January 17, 2024

Respectfully submitted,

By: */s/ Mark W. Mosier*

Emily Johnson Henn
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700

Mark W. Mosier (D.C. Bar No. 974887)
Eric C. Bosset
Kendall T. Burchard
Grace Pyo
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000

*Counsel for FullStory, Inc.*

## CERTIFICATE OF COMPLIANCE

1.      This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(b) because it contains 12,889 words, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

3.      Pursuant to Third Circuit Local Appellate Rule 31.1(c), the text of the electronic brief is identical to the text in the paper copies.

4.      Pursuant to Third Circuit Local Appellate Rule 31.1(c), a virus detection program, Advanced Endpoint Protection Cortex XDR Agent v. 8.1.0, has been run on the electronic file and no virus was detected.


Dated: January 17, 2024                            */s/ Mark W. Mosier*

**CERTIFICATE OF BAR MEMBERSHIP**

Pursuant to Third Circuit Local Appellate Rule 28.3(d), I certify that the following attorneys whose names appear on the brief are members of the bar of this Court:

Eric C. Bosset

Emily Johnson Henn

Mark W. Mosier

Kendall T. Burchard

Grace Pyo

*/s/ Mark W. Mosier*

**CERTIFICATE OF SERVICE**

I certify that on January 17, 2024, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Mark W. Mosier*

.